#25621-a-GAS

**2011 S.D. 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DENNIS LINDSKOV and
AUTOMOTIVE COMPANY, INC.,                    Plaintiffs and Appellants,

v.

LES LINDSKOV and PREMIER
EQUIPMENT, L.L.C., d/b/a
PREMIER EQUIPMENT and d/b/a
K&A IMPLEMENT, L.L.C.,                        Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
WALWORTH COUNTY, SOUTH DAKOTA

* * * *

HONORABLE TONY L. PORTRA
Judge

* * * *

RONALD A. PARSONS, Jr.
PAMELA R. BOLLWEG
STEVEN M. JOHNSON
SHANNON R. FALON of
Johnson, Heidepriem &
  Abdallah, LLP
Sioux Falls, South Dakota                    Attorneys for plaintiffs
                                             and appellants.

JOHN W. BURKE of
Thomas, Braun, Bernard
  & Burke, LLP
Rapid City, South Dakota                     Attorneys for defendants
                                             and appellees.

* * * *

ARGUED ON MARCH 23, 2011

OPINION FILED **07/06/11**

#25621

SEVERSON, Justice

[¶1.]        Dennis Lindskov purchased Les Lindskov's interest in Automotive

Company, Inc.  Dennis and Les signed a dissolution agreement that contained a

non-disparagement clause.  When Les opened a competing business within months

of the sale of his interest in the company, Dennis initiated this breach of contract

and fraud and deceit action, alleging that the non-disparagement clause contained a

covenant not to compete.  The trial court granted Les's motions for summary

judgment on both causes of action and dismissed Dennis's complaint.  We affirm.

### Background

[¶2.]        Automotive Company is a South Dakota corporation engaged in the

sales and service of farm implement equipment.  It is an authorized dealer of New

Holland farm equipment with dealerships in Isabel and Mobridge, South Dakota.

Automotive Company was incorporated in December 1982, and cousins, Dennis and

Les, owned and operated it until 2006.  They were equal shareholders of the

company with each owning approximately 2,500 shares of common stock.  Les

served as the company's president, and Dennis served as its secretary-treasurer.

Both served on the company's board of directors.

[¶3.]        By spring 2005, the cousins' relationship had deteriorated.  Dennis and

Les therefore discussed the possibility of dividing Automotive Company.  They

wrote to New Holland to inquire whether one party could operate the Isabel

dealership while the other operated the Mobridge dealership.  In March 2005, New

Holland declined the cousins' request, stating that it would "not approve any

separation of the existing locations."  New Holland also declined to establish a new

dealership for either Dennis or Les. The cousins' relationship became further strained in the coming months.

[¶4.]     In October 2005, Les initiated an action seeking the dissolution of Automotive Company. The cousins were now represented by counsel, and each negotiated and extended offers to purchase the other's interest in the company. On April 14, 2006, Dennis agreed to purchase Les's 2,500 shares in the company for $1,190,000, as well as the real property associated with the business for $210,000. The cousins executed a dissolution agreement that day. Section 4.1 of the agreement was entitled "Confidentiality and Non-disparagement":

> In addition, Seller and Buyer agree that they shall not hereinafter engage in any form of conduct, or make any statements or representations, that will disparage or otherwise harm the reputation, goodwill, or commercial interests of the other party.

The cousins closed on their agreement on April 25, 2006. Les remained on the company's board of directors and continued to serve as its president until the closing.

[¶5.]     Les subsequently elected to enter business with his four sons. On May 12, 2006, the South Dakota Secretary of State issued a Certificate of Organization to Les's new venture, Premier Equipment, L.L.C. Les and his sons opened a farm implement dealership in Mobridge in late 2006. And in October 2006, they acquired K&A Implement, a New Holland dealership in Eureka, South Dakota. Finally, Premier Equipment opened a branch location in Isabel in spring 2007. Through Premier Equipment, Les now sells farm equipment in the Isabel and Mobridge areas in immediate competition with Automotive Company.

[¶6.] In September 2008, Dennis initiated this breach of contract and fraud and deceit action against Les. Les filed motions for summary judgment on both causes of action. After hearings on the motions, the trial court granted Les's motions for summary judgment on both causes of action. As to the breach of contract claim, the trial court concluded that the non-disparagement clause did not prohibit competition by Les. As to the fraud and deceit claim, the trial court concluded that Les did not owe Dennis a duty to disclose his intent to open a competing business. The trial court entered a judgment dismissing Dennis's complaint.

## Standard of Review

[¶7.] This Court's standard of review of a grant or denial of a motion for summary judgment is well-settled. "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we determine whether the moving party has demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Advanced Recycling Sys., L.L.C. v. Se. Prop., L.P.*, 2010 S.D. 70, ¶ 10, 787 N.W.2d 778, 783 (quoting *Janis v. Nash Finch Co.*, 2010 S.D. 27, ¶ 6, 780 N.W.2d 497, 500). "[I]n considering a trial court's grant of a motion for summary judgment, this Court 'will affirm only if all legal questions have been decided correctly.'" *Id.* (quoting *Gehrts v. Batteen*, 2001 S.D. 10, ¶ 4, 620 N.W.2d 775, 777).

## Analysis and Decision

[¶8.] **1. Whether Les breached the non-disparagement clause of the dissolution agreement by opening a competing business.**

[¶9.] Dennis argues that Les breached the non-disparagement clause of the dissolution agreement by opening a competing business. In addressing his argument, we strive to give effect to the plain meaning of the agreement. *Lillibridge v. Meade Sch. Dist. #46-1*, 2008 S.D. 17, ¶ 12, 746 N.W.2d 428, 432 (quoting *In re Dissolution of Midnight Star Enter., L.P.*, 2006 S.D. 98, ¶ 12, 724 N.W.2d 334, 337). We read and understand contracts "according to the natural and obvious import of the language without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." *Id.* ¶ 19 (citing *Citibank (S.D.), N.A. v. Hauff*, 2003 S.D. 99, ¶ 12, 668 N.W.2d 528, 533). "Contract interpretation is a question of law reviewed de novo." *Id.* ¶ 9 (citing *Hanson v. Vermillion Sch. Dist. #13-1*, 2007 S.D. 9, ¶ 24, 727 N.W.2d 459, 467).

[¶10.] The crux of the dispute in this case is the breadth of conduct the non-disparagement clause prohibits. Dennis argues that because the clause broadly prohibits Les from engaging in any form of conduct that harms his commercial interests, it essentially contains a covenant not to compete. He thus maintains that Les breached that covenant by opening a competing business within months of his departure from Automotive Company. Les argues that, by its plain language, the clause is not a covenant not to compete. In examining the language of the entire clause, we ultimately disagree with Dennis's contention that it creates a covenant not to compete.

[¶11.] The plain language of the non-disparagement clause prohibits both Dennis and Les from disparaging or harming the other's commercial interests. If the clause contains a covenant not to compete, it thus prohibits Dennis from

competing with Les. Yet the intended purpose of the dissolution agreement was for Dennis to own and operate Automotive Company. Reading the clause as a covenant not to compete thus negates the parties' intent. *See Cramer v. Smith*, 1997 S.D. 137, ¶ 10, 572 N.W.2d 445, 447 (citing *Chord v. Pacer Corp.*, 326 N.W.2d 224, 226 (S.D. 1982)).

[¶12.] Dennis seizes on the prohibition in the non-disparagement clause of any form of conduct that harms his commercial interests. But we cannot read that imprecise language as prohibiting actual competition. In South Dakota, contracts in restraint of trade are generally void as against public policy: "Any contract restraining exercise of a lawful profession, trade, or business is void to that extent, except as provided by §§ 53-9-9 to 53-9-12, inclusive." SDCL 53-9-8. There must be a distinct agreement creating a covenant in restraint of trade. *Pub. Op. Publ'g Co. v. Ransom*, 34 S.D. 381, 148 N.W. 838, 842 (1914). In this case, the clause does not contain distinct language creating a covenant not to compete and additionally does not fall within the statutory exceptions. *See id.* Because the clause does not create a covenant not to compete, Les did not breach the dissolution agreement by opening a competing business after his departure from Automotive Company. The trial court properly granted Les's motion for summary judgment on the breach of contract claim.

[¶13.] **2. Whether Les committed fraud and deceit by not disclosing his intent to open a competing business.**

[¶14.] Dennis argues that Les committed fraud and deceit by not disclosing his intent to open a competing business. "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any

damage which he thereby suffers." SDCL 20-10-1. Deceit is "[t]he suppression of a fact by one who is bound to disclose it[.]" SDCL 20-10-2(3). To proceed on his fraud and deceit claim, Dennis must establish that Les had a duty to disclose his intent to compete. The existence of a duty to disclose is a question of law that we review de novo. *Schwartz v. Morgan*, 2009 S.D. 110, ¶ 10, 776 N.W.2d 827, 830 (citing *McGuire v. Curry*, 2009 S.D. 40, ¶ 9, 766 N.W.2d 501, 505).

[¶15.] A fiduciary duty may include a duty to disclose. *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 499-500 (S.D. 1990) (citations omitted). An officer or director of a corporation has a fiduciary duty to act in a manner that he reasonably believes is in its best interests. *See* SDCL 47-1A-830, -842. He is bound to exercise the "utmost good faith and fair dealing" with the company. *Mueller v. Cedar Shore Resort, Inc.*, 2002 S.D. 38, ¶ 26, 643 N.W.2d 56, 66 (citing *Hayes v. N. Hills Gen. Hosp.*, 1999 S.D. 28, ¶ 52, 590 N.W.2d 243, 253) (additional citations omitted). When dealing with the company, an officer or director must "make full and frank disclosure of the circumstances" of a business transaction. *Schurr v. Weaver*, 74 S.D. 378, 384, 53 N.W.2d 290, 293 (1952) (citing *Knudsen v. Burdett*, 67 S.D. 20, 287 N.W. 673 (1939); *Troy Mining Co. v. White*, 10 S.D. 475, 74 N.W. 236 (1898)).

[¶16.] Dennis's purchase of Les's interest in Automotive Company was not an ordinary business transaction between a company and its officer or director. Les initiated an action seeking the dissolution of the company. After signing the dissolution agreement, Les continued to serve as an officer or director of the

company for nearly two weeks until the final closing on the sale of his stock.*

Because the sale of Les's interest in the company occurred during an adversarial

dissolution proceeding, Les did not have a fiduciary duty to disclose his intent to

compete.

[¶17.]       But this conclusion does not end our inquiry.  Even in the absence of a

fiduciary duty, a party may be bound to disclose facts relating to the transaction.

*Schwartz*, 2009 S.D. 110, ¶ 12, 776 N.W.2d at 831 (citing *Ducheneaux v. Miller,* 488

N.W.2d 902, 913 (S.D. 1992)).  A party to a business transaction is under a duty to

disclose facts basic to the transaction: (1) if he knows that the other party is about

to enter into it under a mistake as to the facts, (2) if he knows that the other party

would reasonably expect disclosure of the facts because of the relationship between

them, the customs of the trade, or other objective circumstances; and (3) if the

information is not otherwise discoverable by reasonable care.  *Id.* ¶¶ 12-13 (citing

*Ducheneaux*, 488 N.W.2d at 913 (adopting Restatement (Second) Torts § 551(2)(e))).

[¶18.]       We must first consider whether Les's intent to open a competing

business is a fact basic to the transaction.  We have said that the "facts basic to the

transaction" analysis is best suited to cases

> in which the advantage taken of the plaintiff's ignorance is so
> shocking to the ethical sense of the community and is so extreme
> and unfair as to amount to a form of swindling, in which the
> plaintiff is led by appearances into a bargain that is a trap, of
> whose essence and substance he is unaware.

---

\*       Les's preparations to open a competing business during this time were
merely exploratory.  He contacted New Holland to inquire about available
dealerships in the area, but he neither utilized Automotive Company's
resources in laying his plans to compete nor directly solicited its customers or
employees.

*Id.* ¶ 13 (quoting Restatement (Second) Torts § 551(2)(e)(cmt 1)).  *See, e.g.,* *Ducheneaux*, 488 N.W.2d at 913 (holding that this high standard was satisfied when a rancher did not disclose that the cattle he was selling were infected with a contagious disease that prevented importing them into South Dakota).

[¶19.]     Les's failure to disclose his intent to compete does not meet this high standard.  When Les initiated an action seeking the dissolution of Automotive Company, Dennis and Les, who were both represented by counsel, extended offers to purchase the other's interest in the company.  This was an arms-length transaction between business partners with equal bargaining power.  Although a duty to disclose may arise in some arms-length business transactions, Les's failure to disclose his intent to compete is not "so shocking to the ethical sense of the community and . . . so extreme and unfair as to amount to a form of swindling."  *See* *Schwartz*, 2009 S.D. 110, ¶¶ 12-13, 776 N.W.2d at 831 (citation omitted).  Because Les had no duty to disclose, he did not commit fraud or deceit as a matter of law.  *See* SDCL 20-10-2(3).  The trial court properly granted Les's motion for summary judgment on the fraud and deceit claim.

[¶20.]     Affirmed.

[¶21.]     GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and MEIERHENRY, Retired Justice, concur.