#25813-a-DG

**2012 S.D. 6**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KEVIN RONAN, M.D. and
PATRICIA RONAN,                                    Plaintiffs and Appellants,

    v.

SANFORD HEALTH d/b/a SANFORD
HOSPITAL, SANFORD CLINIC,
BRADLEY E. HRUBY, M.D., WENDELL
W. HOFFMAN, M.D., RICHARD D.
HARDIE, M.D., and DAVID A. THOMAS, M.D.,        Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICIA C. RIEPEL
Judge

\* \* \* \*

MICHAEL A. HENDERSON
STEPHEN C. LANDON of
Cadwell, Sanford, Deibert
 & Garry, LLP
Sioux Falls, South Dakota                    Attorneys for plaintiffs
                                             and appellants.

REED RASMUSSEN
JEFF L. BRATKIEWICZ of
Siegel, Barnett & Schutz, LLP
Aberdeen, South Dakota                       Attorneys for defendants
                                             and appellees.

\* \* \* \*

ARGUED OCTOBER 3, 2011

OPINION FILED **02/01/12**

#25813

GILBERTSON, Chief Justice

[¶1.] A doctor and his wife filed suit against Sanford Health and several of its treating physicians (collectively "Defendants") alleging medical malpractice. The jury entered a verdict for Defendants. The plaintiffs appeal two evidentiary rulings. We affirm.

## FACTS

[¶2.] In 2006, Dr. Kevin Ronan was an anesthesiologist practicing in Sioux Falls, South Dakota. Dr. Ronan vacationed in Phoenix, Arizona with friends from February 21 – 26, 2006. On the evening of March 8, 2006, Dr. Ronan began to feel ill. The next day he went to see his physician, who suspected Dr. Ronan had the flu.

[¶3.] Dr. Ronan's condition worsened and he went to the emergency room on March 10. He was seen by various physicians, including Dr. Bradley E. Hruby. Dr. Ronan was admitted to the hospital and given antibiotics. He was referred to a specialist in infectious diseases. The specialist's diagnosis recognized that Dr. Ronan might have coccidioidomycosis (cocci), or "valley fever." Cocci is a fungal disease endemic in the southwestern United States.[1] The specialist was unable to confirm the diagnosis, as tests for cocci often come back negative during the first few days of an infection.

---

1. *See* Ctrs. for Disease Control & Prevention, *Coccidiodomycosis*, http://www.cdc.gov/nczved/divisions/dfbmd/diseases/coccidioidomycosis/ (last visited January 25, 2012).

[¶4.] Despite his failure to significantly improve, Dr. Ronan was released from the hospital. Dr. Ronan continued to suffer high fevers, chills, headaches, chest pains, rashes, and neck stiffness.

[¶5.] Throughout March, Dr. Ronan was referred to more physicians, including another infectious disease specialist, Dr. Wendell Hoffman. Despite repeated inquiries by the Ronans, Dr. Hoffman did not immediately order further diagnostic tests to determine if Dr. Ronan had cocci. Dr. Ronan's condition worsened and he began to develop breathing problems. After another visit to the emergency room, he was treated with steroids. His condition did not improve. Eventually, Dr. Richard Hardie, a pulmonologist, recommended a lung biopsy and ordered diagnostic blood tests. Dr. Ronan ultimately had a lung biopsy before the results of the blood tests returned.

[¶6.] On March 28, 2006, Dr. Hoffman informed the Ronans that the blood tests confirmed that Dr. Ronan had cocci. Since his diagnosis, Dr. Ronan has continued to have severe medical problems. Dr. Ronan and his wife filed suit against Defendants, alleging medical negligence in failing to properly and timely pursue a diagnosis. The Ronans also allege negligence in administering steroids to a patient with acute, undiagnosed, and untreated cocci. The jury returned a verdict in favor of Defendants.

[¶7.] On appeal, the issues presented are:

1. Whether the circuit court abused its discretion in excluding alleged statements made by employees of Defendants under SDCL 19-12-14.

2.     Whether the circuit court erred in precluding the impeachment of a defense expert witness.

## STANDARD OF REVIEW

[¶8.]     "We afford broad discretion to circuit courts in deciding whether to admit or exclude evidence." *Kurtz v. Squires*, 2008 S.D. 101, ¶ 3, 757 N.W.2d 407, 409. "The trial court's evidentiary rulings are presumed correct and will not be overturned absent a clear abuse of discretion. An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *St. John v. Peterson*, 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74. "We review the circuit court's construction of statutes de novo." *People ex rel. J.L.*, 2011 S.D. 36, ¶ 4, 800 N.W.2d 720, 722.

## ANALYSIS

[¶9.]     **1.     Whether the circuit court abused its discretion in excluding alleged statements made by employees of Defendants under SDCL 19-12-14.**

[¶10.]     On September 22, 2006, the Ronans met with two Sanford Health employees, Becky Nelson, Chief Operations Officer, and Jeannie Schwarting, Risk Manager. Patricia Ronan took notes at the meeting. Her notes indicate that Schwarting said, "I am so sorry we failed you" and "we let you down." The notes also attribute several comments to both Nelson and Schwarting, including that "[Dr.] Hruby got the whole thing off on the wrong track and it snowballed" and that the situation was an example of how things can go "when people don't do their

jobs."[2] Defendants conceded at oral argument that the notes were properly admitted for the court to rule on the issue.

[¶11.]       At the pretrial hearing, Defendants noted that the Ronans had listed Nelson and Schwarting as witnesses. Defendants argued that evidence of this meeting was inadmissible under SDCL 19-12-14. SDCL 19-12-14 provides:

> No statement made by a health care provider apologizing for an adverse outcome in medical treatment, no offer to undertake corrective or remedial treatment or action, and no gratuitous act to assist affected persons is admissible to prove negligence by the health care provider in any action for damages for personal injury or death alleging malpractice against any health care provider. Nothing in this section prevents the admission, for the purpose of impeachment, of any statement constituting an admission against interest by the health care provider making such statement.[3]

This statute was adopted in 2005. This is the first opportunity this Court has had to examine this statute.

[¶12.]       The circuit court took the issue under advisement. Immediately before trial, the court concluded the evidence concerning the September 2006 meeting was inadmissible. The court reasoned that the notes went to the issue of negligence, which was specifically prohibited under the statute. The court also indicated that at that pretrial stage of the proceedings, the court was not aware if the notes were

---

2.      Patricia Ronan's notes include other statements, but the parties appear to agree that the remaining statements were properly excluded.

3.      While it appears the majority of states have a version of an "apology statute," the language of this statute is unique to South Dakota. Consequently, comparison of cases analyzed under those statutes is not helpful.

really being offered under the impeachment exception because the court did not know what was supposed to be impeached.

[¶13.] On appeal, the Ronans argue that not all the statements from the meeting fall within the scope of SDCL 19-12-14. In other words, not all the statements are "apologizing for an adverse outcome in medical treatment," an "offer to undertake corrective or remedial treatment or action," or a "gratuitous act to assist affected persons." SDCL 19-12-14. Defendants respond that this argument was waived because it was not raised at the lower level. Alternatively, Defendants assert that the statements in the notes were properly excluded under SDCL 19-12-14.

[¶14.] "Ordinarily an issue not raised before the trial court will not be reviewed at the appellate level." *State v. Gard*, 2007 S.D. 117, ¶ 15, 742 N.W.2d 257, 261. "The trial court must be given an opportunity to correct any claimed error before we will review it on appeal." *Id.* The Ronans have not directed us to a location in the record where this argument was raised below. In reviewing the record, we cannot find a ruling by the circuit court on this issue. It appears that this issue was waived.

[¶15.] Moreover, even if this argument was not waived, there was no offer of proof that provides factual context to demonstrate that the statements should not have been excluded under SDCL 19-12-14. Although the notes were provided to the

court, there is no context to understand them.[4]  The Ronans did not offer their own testimony regarding the meeting.  Instead, the Ronans' offers of proof were testimony from Schwarting and Nelson.  When questioned, however, neither Schwarting nor Nelson could recall making the statements in Patricia Ronan's notes.  Schwarting and Nelson characterized the meeting as a time for the Ronans to discuss Dr. Ronan's clinical course.  The Ronans failed to show that the statements did not fit within SDCL 19-12-14.  Therefore, even if the issue was not waived, the Ronans did not demonstrate that the circuit court erred in excluding the statements under SDCL 19-12-14.

[¶16.]      The Ronans also argue that the statements are admissible as "admissions against interest for purposes of impeachment" under the final sentence of SDCL 19-12-14.  That sentence provides: "Nothing in this section prevents the admission, for the *purpose of impeachment*, of any statement constituting an admission against interest by the health care provider making such statement." (Emphasis added.)  There is, however, no dispute that the Ronans' offers of proof were made in their case-in-chief when there was no defense evidence to impeach; and Schwarting and Nelson were not called as rebuttal witnesses.  Nevertheless, the Ronans assert that they were entitled, during their case-in-chief, to use

---

4.    Defendants argue that the statements in the notes are not admissions against interest.  They point out that the statements in the notes were made in a meeting to discuss Dr. Ronan's care with Schwarting and Nelson.  Furthermore, Schwarting and Nelson both testified that the purpose of the meeting was to listen to the Ronans' concerns over the treatment Dr. Ronan had received.  They also testified that, if they had apologized, it would have been an apology that the treatment had not met the Ronans' expectations.

Schwarting's and Nelson's "admissions" in the notes to impeach the Defendants' "general position and defenses."

[¶17.] Concededly, statements of witnesses may be admissible as admissions against interest. *See* SDCL 19-16-32 (Rule 804(b)(3)). They may also be admissible as admissions of a party opponent. *See* SDCL 19-16-3 (Rule 801(d)(2)). But these rules only govern their substantive admissibility as hearsay, and the last sentence of SDCL 19-12-14 imposes an additional restriction on the use of health care apology statements. They may only be used for the purpose of impeachment. *See id.* And, to admit extrinsic evidence of statements for purposes of impeachment, the proponent must comply with SDCL 19-14-25 (Rule 613(b)). Under that rule, the "[e]xtrinsic evidence of a prior inconsistent statement by a witness is [generally] not admissible unless the witness is afforded an opportunity to explain or deny the same . . . ."). *See also* 4 Michael H. Graham, Handbook of Federal Evidence 782 (7th ed. 2011) ("A prior statement of a witness may be employed for purposes of impeachment only if inconsistent with the witness' in-court testimony.").[5] Therefore, because Schwarting and Nelson were listed as the Ronans' witnesses and had not testified at the time the statements were offered, the circuit court properly concluded that at that point in the trial, the notes were not being offered to impeach

---

5. *See also* SDCL 19-14-8 (Rule 607) (providing that "[t]he credibility of *a witness* may be attacked by any party, including the party calling him" (emphasis added)). This Court has noted that when "*a witness* makes an issue of his credibility by favorable direct testimony 'he opens the door to impeachment evidence on cross-examination.'" *Kostel v. Schwartz*, 2008 S.D. 85, ¶ 20, 756 N.W.2d 363, 373 (emphasis added) (internal quotation marks omitted) (quoting *State v. Litschewski*, 1999 S.D. 30, ¶ 22, 590 N.W.2d 899, 903).

under the last sentence of SDCL 19-12-14. They were being offered as substantive evidence to prove Defendants' negligence in violation of the general rule in the first part of SDCL 19-12-14. We affirm the circuit court's conclusion that at the point the notes were offered, the last sentence of SDCL 19-12-14 did not apply.

[¶18.]     The Ronans cite two cases, *People v. Byfield*, 790 N.Y.S.2d 434 (N.Y. App. Div. 2005), and *Dodson v. Allstate Insurance Co.*, 47 S.W.3d 866 (Ark. 2001), in support of their argument that admissions may be used to negate an opposing party's general position at trial. Neither case applies. *Dodson* did involve the general question whether admission of a pleading could be used as a party admission that was contrary to that party's position at trial. *Dodson*, 47 S.W.3d at 877. But the specific question was whether the pleading was actually impeaching; i.e., whether it "comprise[d] evidence of [the opposing party's] position of the claims in the case." *Id.* The court found that it was impeaching. The court then allowed use of the pleading but only because the court concluded that the pleading was admissible as a "prior inconsistent statement" under Arkansas's equivalent to SDCL 19-14-24 and -25 (Rule 613). *Id.* at 879-80. The court did not, however, discuss the predicate requirements for admissibility of extrinsic proof of prior inconsistent statements under Rule 613(b). *Id.* Additionally, *Dodson* did not consider whether some inconsistent testimony is a prerequisite to the admission of statements constituting admissions against interest when offered under the impeachment limitation in an additional statute like SDCL 19-12-14. *Byfield* is also distinguishable. In *Byfield*, the court only held that the court did not abuse its discretion in allowing the prosecution to admit the defendant's alibi notice and to

cross-examine a defense witness about a contrary statement in the notice. *Byfield*, 790 N.Y.S.2d at 435. Thus, in *Byfield*, one permitted use involved cross-examination of trial testimony. Further, with respect to the permitted use of the judicial admission (the alibi notice), the court did not discuss its admissibility under a statute like SDCL 19-12-14 that limited the admission's use to impeachment.

[¶19.] From our review of the court's decision to exclude testimony related to the September 2006 notes, we cannot conclude that the court abused its discretion.

[¶20.] **2. Whether the circuit court erred in precluding the impeachment of a defense expert witness.**

[¶21.] Dr. John Galgiani was retained as an expert witness for Defendants by the Davenport Evans law firm. Dr. Galgiani's retention was disclosed to Russ Janklow, who represented the Ronans at that time. In August 2008, the Davenport Evans law firm withdrew from the case due to a conflict of interest. After Dr. Galgiani was retained, Dr. Ronan was referred to him by another physician for treatment. The record indicates the referral occurred sometime after October 2008. At the time the appointment was made, Dr. Ronan was aware that Dr. Galgiani had been consulted as an expert. Recognizing a potential conflict, Dr. Galgiani cancelled the appointment before seeing Dr. Ronan.

[¶22.] Defendants moved in limine to preclude the Ronans from questioning Dr. Galgiani about the cancelled appointment. Over the Ronans' objection, the circuit court granted the motion, finding the issue of the cancelled appointment to be irrelevant. However, the court indicated that it would reconsider its ruling for impeachment purposes if the door was opened by testimony.

[¶23.] At trial, counsel for Defendants asked Dr. Galgiani if he would have treated Dr. Ronan with antifungal medication. Based on this testimony, the Ronans asked the court to reconsider its earlier ruling prohibiting questioning about the cancelled appointment. The Ronans argued that Defendants opened the door to impeachment with this line of questioning because Dr. Galgiani had the opportunity to actually treat Dr. Ronan but declined to do so in order to continue serving as an expert witness for the defense. According to the Ronans, this goes to Dr. Galgiani's credibility and was therefore appropriate grounds for impeachment. The court affirmed its earlier ruling that questioning Dr. Galgiani about cancelling his appointment with Dr. Ronan was not relevant. No offer of proof was made on this issue. On appeal, the Ronans argue that the circuit court abused its discretion in prohibiting impeachment of Dr. Galgiani.

[¶24.] Defendants assert that the court was correct in determining that the cancellation of the appointment was not relevant. Defendants also argue that Dr. Galgiani would presumably have been precluded from serving as the defense expert if he had seen Dr. Ronan. Furthermore, under the Ronans' theory, whenever a defendant reveals an expert, a plaintiff could attempt to make appointments with that expert. When the expert refused, the plaintiff could use that refusal to attempt to impeach the expert. This would put retained experts in a difficult situation.

[¶25.] The only authority the Ronans provide on appeal is *Mousseau v. Schwartz*, 2008 S.D. 86, 756 N.W.2d 345. In *Mousseau*, the plaintiff was not allowed to impeach the defendant regarding the probationary status of his medical license. *Id.* ¶ 25, 756 N.W.2d at 355. This Court held that Schwartz's testimony

amounted to expert testimony and evidence about the status of his medical license was directly relevant to the expert's credibility. *Id.* ¶ 36, 756 N.W.2d at 360-61. The Ronans analogize this case to *Mousseau* because they were not allowed to question Dr. Galgiani and call his credibility into question.

[¶26.] The Ronans reliance on *Mousseau* is misplaced. In that case, the impeachment was of the defendant, Dr. Schwartz. *Id.* The status of the defendant's medical license is more relevant to his credibility than a cancelled appointment. It directly related to his ability to provide competent medical care. In this case, however, whether Dr. Galgiani chose to treat a particular patient does not affect his competency to give an expert medical opinion on the treatment a patient actually received.

[¶27.] "The trial court's evidentiary rulings are presumed correct and will not be overturned absent a clear abuse of discretion. An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *St. John*, 2011 S.D. 58, ¶ 10, 804 N.W.2d at 74. In this case, the Ronans have not demonstrated how the circuit court's decision to prohibit the impeachment of Dr. Galgiani in this manner was an abuse of discretion. The court found it was not relevant. The Ronans have not shown us otherwise. Furthermore, the Ronans have not demonstrated that they were prejudiced by the circuit court's ruling. *See City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 108 (S.D. 1994) ("Where there has been no offer of proof on excluded testimony, and it is impossible to determine whether the party had been prejudiced by the court's ruling, the

contention that the court erred in excluding testimony has not been preserved for appeal.").

## CONCLUSION

[¶28.]     The circuit court did not abuse its discretion in excluding the statements related to the September 2006 meeting.  Also, the circuit court did not abuse its discretion in prohibiting the impeachment of Dr. Galgiani.  We affirm.

[¶29.]     KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.