#26437-a-LSW

**2013 S.D. 26**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

   v.

KENNETH C. HAUGE,                               Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HANSON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SEAN M. O'BRIEN
Retired Judge

* * * *

MARTY J. JACKLEY
Attorney General

TIMOTHY J. BARNAUD
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


DOUGLAS M. DAILEY of
Morgan Theeler, LLP
Mitchell, South Dakota                  Attorneys for defendant
                                        and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 12, 2013

OPINION FILED **03/27/13**

#26437

WILBUR, Justice

[¶1.]     A jury convicted Kenneth Hauge of possession of one to ten pounds of marijuana in violation of SDCL 22-42-6. He appeals a number of issues including: the trial court's denial of his motion for judgment of acquittal; the denial of his proposed jury instructions; the denial of his motion to have the jury view his residence; and the trial judge's failure to recuse himself on the basis of impartiality pursuant to SDCL 15-12-37.

## FACTS AND PROCEDURAL HISTORY

[¶2.]     On June 23, 2011, Hanson County Sheriff Randell Bartlett received a phone call from Drug Enforcement Agency Agent Richard Mulholland. Agent Mulholland had obtained information that Hauge was growing marijuana in his yard near the back door to his residence in Alexandria, South Dakota. As a result, Sheriff Bartlett went to Hauge's residence and observed what appeared to be marijuana plants "growing in a flower bed near the back deck or back patio."

[¶3.]     The next day, Sheriff Bartlett and Drug Task Force Agent Dean Knippling went to the alley by Hauge's residence and observed the marijuana plants growing in the backyard. The flower bed containing the marijuana plants was approximately 14 to 15 feet long and about 3 feet wide. The grass surrounding the flower bed had been mowed. It was then that Hauge came out of his house to speak with the officers.

[¶4.]     Sheriff Bartlett questioned Hauge about the marijuana growing in his yard. Sheriff Bartlett informed Hauge that it was illegal for Hauge to grow marijuana. In addition to asking permission, Sheriff Bartlett asked that Hauge

sign a permission to search form to remove the marijuana plants. In response, Hauge asked what would happen if he refused to sign the form. Sheriff Bartlett stated that he would get a warrant. At this point, Hauge said that the marijuana did not belong to him and that someone named "Brenda" had planted it. He then remarked that "it wasn't good stuff" and "that it was just plants growing." Hauge also told the officers that he had harvested some marijuana in the past and attempted to use it. Additionally, Hauge stated that he had paperwork saying that it was legal to grow the marijuana and gave the paperwork to Sheriff Bartlett. Agent Knippling testified that the papers did not give Hauge permission to grow marijuana. Sheriff Bartlett and Agent Knippling also testified that at no time throughout the course of the investigation did they doubt that Hauge knew that the plants were marijuana.

[¶5.] Hauge signed the permission to search form. The officers then began to pull the plants that were growing in the flower bed. Hauge assisted the officers. The plants ranged in size from 6 inches to 36 inches tall. Sheriff Bartlett testified that they pulled over 200 plants before they "quit counting."

[¶6.] The plants were then transported to the Hanson County Sheriff's Office and dried for 60 to 90 days. On September 12, 2011, Agent Knippling packed and shipped the plants to the State Health Lab for testing. The State Health Lab determined that the dried plants were marijuana and weighed 23.8 ounces.

[¶7.] On October 19, 2011, Hauge was charged with one count of possession of marijuana, one to ten pounds, in violation of SDCL 22-42-6. Hauge filed an affidavit for change of judge on March 30, 2012. In a letter from the presiding judge

of the circuit dated April 6, 2012, Hauge's affidavit was deemed untimely pursuant to SDCL 15-12-27 and was subsequently denied.

[¶8.] On May 18, 2012, a jury convicted Hauge of possession of one to ten pounds of marijuana in violation of SDCL 22-42-6. Hauge was subsequently sentenced to ten years in the penitentiary with six years suspended.

[¶9.] Hauge appeals the following issues:

1. Whether the trial court erred in denying Hauge's motion for judgment of acquittal.

2. Whether the trial court abused its discretion in denying Hauge's proposed jury instructions.

3. Whether the trial court abused its discretion in denying Hauge's motion to allow the jury to visit Hauge's residence.

4. Whether the trial judge abused his discretion when he failed to recuse himself on his own accord pursuant to SDCL 15-12-37.

## ANALYSIS AND DECISION

[¶10.] **1. Whether the trial court erred in denying Hauge's motion for judgment of acquittal.**

[¶11.] Hauge argues that the trial court erred when it denied Hauge's motion for judgment of acquittal because the State failed to prove beyond a reasonable doubt that he knowingly possessed between one and ten pounds of marijuana. Hauge asserts that he did not exercise dominion or control sufficient to constitute the crime of possession of marijuana. Hauge further contends that there was nothing to suggest that the marijuana was being cultivated or controlled in anyway and the area in which the marijuana plants were growing was "nothing more than a patch of weeds and grasses with trash and junk strewn throughout." Additionally,

he argues that he did not have exclusive control of the premises because he lives in the middle of town near an alley where any person could throw seeds onto his lawn.

[¶12.]     "The standard of review for denial of a motion for judgment of acquittal is whether the 'evidence was sufficient to sustain the conviction[ ].'" *State v. Janklow*, 2005 S.D. 25, ¶ 16, 693 N.W.2d 685, 693 (quoting *State v. Running Bird*, 2002 S.D. 86, ¶ 19, 649 N.W.2d 609, 613). Whether the State has provided sufficient evidence to sustain the conviction is a question of law reviewed de novo. *State v. Jucht*, 2012 S.D. 66, ¶ 18, 821 N.W.2d 629, 633. "Claims of insufficient evidence are 'viewed in the light most favorable to the verdict.'" *State v. Morgan*, 2012 S.D. 87, ¶ 10, 824 N.W.2d 98, 100 (quoting *State v. Beck*, 2010 S.D. 52, ¶ 7, 785 N.W.2d 288, 292). "The question is whether 'there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt.'" *Id.* "We will not 'resolve conflicts in the evidence, assess the credibility of witnesses, or reevaluate the weight of the evidence.'" *Id.* "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *Id.*

[¶13.]     Hauge was charged and convicted of possession of one to ten pounds of marijuana in violation of SDCL 22-42-6.[1] South Dakota law allows for possession to

---

1.     SDCL 22-42-6 provides:

> No person may knowingly possess marijuana. It is a Class 1 misdemeanor to possess two ounces of marijuana or less. It is a Class 6 felony to possess more than two ounces of marijuana but less than one-half pound of marijuana. It is a Class 5 felony to
>                                         (continued . . .)

be either actual or constructive. *State v. Overbey,* 2010 S.D. 78, ¶ 28, 790 N.W.2d 35, 43. "It is sufficient for a conviction of knowing possession for the defendant to have control over the premises where the narcotics are found." *Id.* Knowing possession "need not be exclusive." *Id.* A defendant can be said to possess a narcotic even if the narcotic is not on his person when he made contact with law enforcement. *Id.*

[¶14.] Here, Hauge constructively possessed the marijuana plants. The record demonstrates that Hauge had control over his yard and the flower bed. The flower bed was located a few feet from Hauge's back door and was approximately 14 to 15 feet long and 3 feet wide. The area surrounding the flower bed had been mowed. Additionally, Hauge did not express any surprise that the marijuana was growing in his back yard and, at one point, said he had paperwork that said it was legal for him to grow the marijuana. Further, Hauge's explanation as to how the marijuana came to grow in his back yard changed as the investigation progressed. Initially, Hauge told the officers that a woman named "Brenda" planted the marijuana, yet later admitted that, in the past, he had harvested some and attempted to use it. From the record, the jury had sufficient evidence to sustain a finding of guilt beyond a reasonable doubt that Hauge knowingly possessed the

---

(. . . continued)

> possess one-half pound but less than one pound of marijuana. It is a Class 4 felony to possess one to ten pounds of marijuana. It is a Class 3 felony to possess more than ten pounds of marijuana. A civil penalty may be imposed, in addition to any criminal penalty, upon a conviction of a violation of this section not to exceed ten thousand dollars.

marijuana in his yard.  Therefore, the trial court correctly denied Hauge's motion for a judgment of acquittal.

[¶15.]       **2.       Whether the trial court abused its discretion in denying Hauge's proposed jury instructions.**

[¶16.]       In declining to grant Hauge's proposed jury instructions, the trial court determined that Hauge's proposed jury instructions on the law on noxious weeds in South Dakota were not relevant.  Hauge asserts that this determination was an abuse of discretion.  At trial, Hauge's theory of defense was that marijuana grows wild in South Dakota and is not classified as a noxious weed.  Thus, according to Hauge, the property owner has no duty to eradicate the marijuana from his property.  Hauge argues that his proposed jury instructions accurately stated the law, namely that marijuana grows wild and that he does not have a duty to eradicate it in his yard because it is not a noxious weed.  Lastly, he contends that the jury would have come back with a different verdict had they been allowed to consider his proposed jury instructions.

[¶17.]       "A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard."  *State v. Roach*, 2012 S.D. 91, ¶ 13, 825 N.W.2d 258, 263 (quoting *State v. Klaudt*, 2009 S.D. 71, ¶ 13, 772 N.W.2d 117, 121).  "[The] jury instructions are to be considered as a whole, and if the instructions when so read correctly state the law and inform the jury, they are sufficient."  *Id.*  "Error in declining to apply a proposed instruction is reversible only if it is prejudicial, and the defendant has the burden of proving any prejudice."  *Janklow*, 2005 S.D. 25, ¶ 25, 693 N.W.2d at 695 (quoting *State v.*

*Martin*, 2004 S.D. 82, ¶ 21, 683 N.W.2d 399, 406). In order to show prejudice, the defendant must show that "the jury would have returned a different verdict if the proposed jury instruction had been given." *State v. Engesser*, 2003 S.D. 47, ¶ 43, 661 N.W.2d 739, 753.

[¶18.] Generally, "an accused must be afforded a meaningful opportunity to present a complete defense." *Roach*, 2012 S.D. 91, ¶ 13, 825 N.W.2d at 263 (quoting *Klaudt*, 2009 S.D. 71, ¶ 13, 772 N.W.2d at 121). "When a defendant's theory is supported by law and . . . has some foundation in the evidence, however tenuous, the defendant has a right to present it." *Id.* "However, 'the law in South Dakota is well settled on the point that courts are not required to instruct as to matters which find no support in the evidence.'" *Janklow*, 2005 S.D. 25, ¶ 26, 693 N.W.2d at 695 (quoting *State v. Jenner*, 451 N.W.2d 710, 720 (S.D. 1990)). "Further, 'it is axiomatic that there can be no abuse of discretion in the refusal of a proposed jury instruction that does not represent a correct statement of the law.'" *Id.* (quoting *State v. Downing*, 2002 S.D. 148, ¶ 27, 654 N.W.2d 793, 801).

[¶19.] The instructions provided to the jury correctly stated the law and informed the jury. Hauge was charged with possession of marijuana, not the failure to control noxious weeds. Thus, the instructions informed the jury on the law of the charged offense – possession of marijuana.

[¶20.] Moreover, Hauge was given the opportunity to present a complete defense and was not prejudiced from the court's denial of his proposed jury instructions. Hauge's theory of defense was that marijuana grows wild in South Dakota, was not a noxious weed to be eradicated, and was planted by someone else.

In support of his theory, he argued to the jury that other plants and grasses were growing in the flower bed with the marijuana and that a woman named "Brenda" planted the seeds. Further, he presented the testimony of the Hanson County Weed and Pest Supervisor, who testified that marijuana grows wild in Hanson County and that it is not a noxious weed for which there is a duty to remove. Therefore, Hauge was not prejudiced by the trial court's denial of his proposed jury instructions.

[¶21.]    **3.    Whether the trial court abused its discretion in denying Hauge's motion to allow the jury to visit Hauge's residence.**

[¶22.]    Hauge further contends that the trial court committed prejudicial error when it denied Hauge's motion to allow the jury to visit his residence pursuant to SDCL 15-14-16.[2] Hauge asserts that the evidence was relevant to support his theory of defense that the marijuana was growing wild in his yard.

[¶23.]    The trial court denied Hauge's motion to have the jury visit Hauge's residence because there had been "sufficient pictures received into evidence that

---

2.    SDCL 15-14-16 allows for a jury to view property in a civil case. SDCL 23A-22-17 allows a jury to view property in a criminal case. SDCL 23A-22-17 provides:

> When, in the opinion of a court, it is proper that a jury should view the place where an offense is alleged to have been committed, or where any other material fact occurred, it may order the jury to be conducted in a body, in the custody of proper officers, to the place, which must be shown to them by a person appointed by the court for that purpose. The officers must be sworn to prevent any person from speaking to or communicating with the jury, and not to do so themselves, on any subject connected with the trial, and to return them into court without unnecessary delay or at a specified time.

would depict the property and that the pictures that were presented would reflect a more accurate depiction or description of the property at that time." The court also reasoned that a sign located near the property, which bore criticism concerning the trial judge, the sheriff of Hanson County, and the prosecuting attorney, would not be proper for the jury to view.[3]

[¶24.]     The trial court is afforded broad discretion "in deciding whether to admit or exclude evidence." *Jucht*, 2012 S.D. 66, ¶ 43, 821 N.W.2d at 639 (quoting *Ronan v. Sanford Health,* 2012 S.D. 6, ¶ 8, 809 N.W.2d 834, 836). The trial court's decision whether to admit or exclude evidence is reviewed under an abuse of discretion standard. *Id.* "[E]ven if a trial court's evidentiary ruling is erroneous, the error must be prejudicial in nature before we will overturn the ruling." *Id.* ¶ 47 (quoting *State v. Fisher*, 2011 S.D. 74, ¶ 32, 805 N.W.2d 571, 578). "Error is prejudicial when, in all probability . . . it produced some effect upon the final result and affected rights of the party assigning it." *Id.*

[¶25.]     Here, the photographs placed in evidence were taken on the date of the offense, depict the condition of the property at that time, exhibit the location of the flower bed, and show a number of marijuana plants growing in Hauge's yard. Hauge was not prejudiced by the court's denial of his motion because he was allowed to argue his theory to the jury that the marijuana was growing wild. Moreover, the jurors would have had to walk past a sign disparaging the trial judge, sheriff, and prosecuting attorney, which could have influenced the jurors

---

3.     The sign read: "Bartlett, O'Brien, and Papendick Unfit for Public Trust[.]"

improperly. Thus, the trial court did not abuse its discretion in denying Hauge's motion.

[¶26.]      **4.**      **Whether the trial judge abused his discretion when he failed to recuse himself on his own accord pursuant to SDCL 15-12-37.**

[¶27.]      On appeal, Hauge argues that the trial judge abused his discretion when he failed to recuse himself on his own accord pursuant to SDCL 15-12-37 because of the appearance of impartiality. Specifically, Hauge asserts that the trial judge presided over a contentious restraining order involving Hauge and one of Hauge's neighbors. Hauge contends that "the small town in which he lived publicly knew Hauge's dissatisfaction with the [restraining order] ruling." Hauge also argues that the trial judge sentenced Hauge's son and Hauge's son made inappropriate remarks toward the trial judge and voiced his belief that marijuana should be legalized. Further, Hauge asserts that there is a perception among community members that Hauge posted the sign containing the disparaging remarks about the trial judge, sheriff, and prosecutor. Additionally, Hauge argues that his affidavit for change of judge filed on March 30, 2012, was improperly denied.

[¶28.]      It is settled "that decisions to recuse lie within a judge's discretion." *Marko v. Marko*, 2012 S.D. 54, ¶ 18, 816 N.W.2d 820, 826. "A judge exercises discretion in deciding whether the facts and circumstances fit within the disqualifying criteria." *Id.* "Once the trial judge has answered the question affirmatively, however, he must recuse himself; that is not discretionary." *Id.* (quoting Childers and Davis, *Federal Standards of Review* § 12.05, at 12-31 (3d ed.

1999)). "By rule, South Dakota judges must disqualify themselves on their own motion under SDCL 15-12-37: 'A judge or magistrate having knowledge of a ground for self-disqualification under the guidelines established by Canon 3C [Canon 3E] shall not, unless Canon 3D [Canon 3F] is utilized, await the filing of an affidavit but shall remove himself . . . .'" *Id.* (alterations in original). "A fair trial before a fair judge is indispensable to due process." *Id.* ¶ 19.

[¶29.] In South Dakota, the Code of Judicial Conduct governs judicial disqualifications. "Canon 3E(1) provides that 'a judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances' of (a) 'personal bias or prejudice' or 'personal knowledge,' (b) prior service as a lawyer in the matter, (c) economic interest, and (d) close personal relationship of relatives or parties to a proceeding." *Id.* (quoting Code of Judicial Conduct, SDCL ch. 16-2, App., Canon 3E(1)).

[¶30.] Indeed, Canon 3E(1) contemplates two scenarios: "(1) situations where the 'judge's impartiality might reasonably be questioned,' and (2) instances 'including but not limited to' when rules (a) through (d) apply." *Id.* ¶ 20 (quoting Code of Judicial Conduct, SDCL ch. 16-2, App., Canon 3E(1)). "Under this rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless whether any of the specific rules in Section 3E(1) apply." *Id.* It is an objective standard, "requiring disqualification where there is 'an appearance of partiality . . . even though no actual partiality exists.'" *Id.* (quoting *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860, 108 S. Ct. 2194, 2202-03, 100 L.

Ed. 2d 855 (1988)).  "Judicial fairness requires the appearance as well as the existence of impartiality."  *Id.*

[¶31.] "[A] judge also has an 'equally strong duty not to recuse when the circumstances do not require recusal.'"  *Id.* ¶ 21 (quoting Center for Professional Responsibility, American Bar Association, *Annotated Model Code of Judicial Conduct* 187 (2004)).  "[U]nder South Dakota's Code of Judicial Conduct, a 'judge shall hear and decide matters assigned to the judge except those in which disqualification is required.'"  *Id.* (quoting Code of Judicial Conduct, SDCL ch. 16-2, App., Canon 3B(1)).  Notably, "[d]isqualification 'was never intended to enable a discontented litigant to oust a judge because of adverse rulings made.'"  *Id.* (quoting *Ex parte Am. Steel Barrel Co.*, 230 U.S. 35, 44, 33 S. Ct. 1007, 1010, 57 L. Ed. 1379 (1913)).

[¶32.] Here, we examine whether the trial judge's "impartiality might reasonably be questioned" for either of the two reasons asserted by Hauge.  Those reasons are: (1) that the trial judge presided over two prior proceedings – one proceeding involving Hauge and the other proceeding, his son, and (2) that Hauge had been associated by the community with the sign, which disparaged the trial court, sheriff, and prosecutor.  Thus, we ask ourselves, "would a reasonable person knowing all of the facts conclude that the judge's impartiality might reasonably be questioned?"  *Id.* ¶ 22.

[¶33.] First, Hauge argues that the trial judge presided over two matters related to Hauge: a contentious restraining order case between Hauge and his neighbor and Hauge's son's sentencing.  However, as Hauge concedes, "even in cases

where judges have had prior judicial exposure to [the] parties, without more, appellate courts have ruled that this is insufficient to show that impartiality might reasonably be questioned." *Id.* ¶ 23. "Every judge is called upon to form opinions on the merits of a case and often on the parties and witnesses involved, but that does not mean the judge has a prejudice or bias." *Id.* In this case, Hauge claims that the restraining order case was contentious and that the public knew of *his* dissatisfaction with the ruling. He also contends that his son made inappropriate remarks to the trial judge during his son's sentencing. This, without more, is insufficient to show that the *judge's* ability to be impartial might reasonably be questioned. We see no objective grounds to conclude that the trial judge's impartiality might be reasonably questioned as to this point.

[¶34.] Second, Hauge asserts that the perception among community members was that Hauge had made the disparaging sign. He contends that the trial judge likely had this perception as well, thus requiring the judge to recuse himself. The record indicates that the trial judge was aware of the presence of the sign and the wording on it. However, without more and even with the trial judge's knowledge of the sign, it appears Hauge was a discontented litigant who was not happy with the trial judge's prior rulings and wanted the judge removed from the present case. Again, we see no objective grounds to conclude that the trial judge's impartiality might be reasonably questioned.

[¶35.] Moreover, Hauge's argument that his affidavit for change of judge was improperly denied is also without merit. Hauge's affidavit was denied as untimely.

SDCL 15-12-27.[4]  Following an informal request to the trial judge to disqualify himself on March 29, 2012,[5] Hauge filed his affidavit on March 30, 2012.  An order filed February 22, 2012, set Hauge's case for a jury trial on April 9, 2012.  Thus, Hauge filed his affidavit less than 15 days before the scheduled date of the jury trial.  Therefore, Hauge's affidavit was untimely under SDCL 15-12-27 and was properly denied.

## CONCLUSION

[¶36.]      The trial court did not err in denying Hauge's motion for judgment of acquittal.  In addition, Hauge's proposed jury instructions were properly denied.  Further, the trial court did not abuse its discretion in denying Hauge's motion to have the jury view his residence.  Lastly, the trial judge did not abuse his discretion when he did not recuse himself pursuant to SDCL 15-12-37.  We affirm.

[¶37.]      GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.

---

4.     SDCL 15-12-27 provides in pertinent part:

> An affidavit for change of judge or magistrate, if against the judge or magistrate who, in the ordinary course, would preside at the hearing or trial, must be filed within the following times:
> (1) If there be any motion or application to be heard upon notice, the party resisting the same may file an affidavit not less than two days before the hearing; or if the matter is returnable in a shorter time, then before the commencement of such hearing;
> (2) If there is no such motion or application:
> . . .
> > (b) In actions triable by a jury at least fifteen days prior to the date said action is scheduled for trial[.]

5.     This motion was denied.