#27080-a-DG
**2015 S.D. 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MURRAY LINDBLOM and
GEORGINE LINDBLOM,                              Plaintiffs and Appellants,

    v.

SUN AVIATION, INC., a
South Dakota Corporation, JEFF
MUHLENKORT, individually, and
NICHOLAS P. HYBERTSON,                          Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CLAY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE STEVEN R. JENSEN
Judge

\* \* \* \*

CATHY A. KNECHT
Sioux Falls, South Dakota                       Attorney for appellants.


STEVEN K. HUFF
BEAU C. BARRETT of
Johnson, Miner, Marlow, Woodward
  & Huff, Prof., LLC
Yankton, South Dakota                           Attorneys for appellees.


\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2015
OPINION FILED **04/08/15**

#27080

GILBERTSON, Chief Justice

[¶1.]        Murray and Georgine Lindblom appeal the circuit court's judgment denying relief on their claim against Sun Aviation, Inc., Jeff Muhlenkort, and Nicholas Hybertson (collectively, "the Defendants") for negligently spraying pesticide on the Lindbloms' cornfield.  The Lindbloms assert the circuit court should have given deference to a South Dakota Department of Agriculture (the Department) investigator's determination that Muhlenkort violated a safety statute.  The Lindbloms further assert that the circuit court erred in concluding the Lindbloms did not prove the Defendants committed negligence—as a matter of law or otherwise.  We affirm.

## Facts and Procedural History

[¶2.]        In June 2011, Hybertson hired Muhlenkort to aerially apply herbicide to a cornfield located near Wakonda in Clay County, South Dakota.  On the evening of June 24, 2011, Muhlenkort sprayed Hybertson's field with "Roundup WeatherMAX"—an herbicide that purportedly damages or kills any vegetation that is not genetically modified to withstand the herbicide.  The Lindbloms' cornfield, which was not modified to tolerate Roundup, was located to the north of Hybertson's field, across a 66-foot-wide, paved road flanked by ditches on both sides.  Muhlenkort, who has held federal and state licenses for aerial spraying of crops since 1981, began loading the chemical at 7:45 p.m., took off for Hybertson's field at 8:00 p.m., began spraying around 8:20 or 8:30 p.m., and arrived back at his airfield at approximately 9:10 p.m.  He testified that all available information indicated the winds had slowed to less than ten miles per hour by 8:00 p.m., and he tested for

-1-

drift prior to spraying by discharging and observing smoke. The labeling requirements for Roundup prohibit application—by air or ground—in wind speeds in excess of ten miles per hour.

[¶3.]    Brad Trudeau, the owner of Centerville Ag—another company that sells and applies herbicides—witnessed Muhlenkort's application of the herbicide. Trudeau testified that he saw Muhlenkort flying about a quarter mile south of the Lindbloms' field, that the wind was blowing from the southeast at about 13 or 14 miles per hour, and that some of the herbicide drifted toward the Lindbloms' field. Several days after Muhlenkort applied the fertilizer to the Hybertson field, corn on the southern end of the Lindbloms' field appeared to begin dying. The Lindbloms contacted Hybertson, who confirmed that Roundup was sprayed on his field on June 24. Hybertson then contacted the Department to report the Lindbloms' concerns. The Department dispatched Virgil Sinning—an agricultural inspector for the Department for 27 years with an additional 16 years of experience in applying agricultural chemicals prior to his work with the Department—to investigate.

[¶4.]    Sinning inspected the Lindbloms' cornfield on July 6, taking samples and photographs. He walked from the north end to the south end, taking one sample at about one-third to one-half of the way into the field, another at about two-thirds of the way into the field, and a number of samples of the rows on the south end of the field. Sinning observed that the majority of the damage was located at the southern end of the Lindbloms' field, although he noted the first couple of rows closest to Hybertson's field were less damaged. Sinning theorized that the first several rows were protected by tall grass growing in the ditch. The samples

indicated the presence of glyphosate, the active ingredient in Roundup. Although no evidence was introduced establishing the amount of the chemical required to damage or kill unmodified corn, Sinning concluded the damage to the Lindbloms' crop was caused by Roundup drifting from Muhlenkort's aerial application of the herbicide to Hybertson's field. The Department also determined that Muhlenkort sprayed in wind speeds ranging from eight to fourteen miles per hour. Based on this data and Sinning's report, the Department concluded Muhlenkort did not apply the Roundup in accordance with its label requirements. The Department informed Muhlenkort that it intended to pursue a civil penalty against him unless he agreed to pay $385 in settlement. Muhlenkort paid the settlement and the Department did not take any further action.

[¶5.]        The circuit court, however, heard other evidence favorable to the Defendants. In reaching its conclusion that Muhlenkort's conduct did not conform to label requirements, the Department relied on wind speed data collected from locations near Beresford and Yankton.[1] The Department initially determined that wind speeds ranged from eight to fourteen miles per hour at the time Muhlenkort applied the herbicide to Hybertson's field. This data reflected conditions near Beresford around 8:00 p.m. Beresford data for 9:00 p.m. indicated wind speeds of six miles per hour with gusts up to eleven miles per hour. Data for the Yankton area indicated wind speeds of approximately nine miles per hour between 8:15 and

---

1.        The circuit court found that there was no reliable wind data for the immediate area of the Hybertson and Lindblom fields, which are located between Beresford and Yankton.

9:15 p.m. The National Data Center also reported wind speeds of nine miles per hour around Yankton during this time, with no gusts after 7:00 p.m.

[¶6.] The circuit court also heard evidence of other possible causes for the damage to the Lindbloms' corn. In the month before the damage manifested, Centerville Ag applied "Verdict," another herbicide, to the Lindbloms' corn approximately five days after it was planted. The warning label for Verdict indicates it can cause delayed emergence or stunted growth in cool conditions or where there is excessive moisture. Muhlenkort introduced aerial photographs taken on July 2 showing areas of the Lindbloms' cornfield that suffered damage due to excessive moisture. Some photographs show standing water at the southern end of the field. The Lindbloms also acknowledged their cornfield suffered damage from the wet conditions.

[¶7.] The Lindbloms also own a soybean field located immediately to the east of their cornfield. No barrier separates the Lindbloms' corn and soybean fields. On June 30, prior to Sinning's inspection, Centerville Ag applied Roundup—the same herbicide that Muhlenkort sprayed on Hybertson's field—to the Lindbloms' soybean field using a ground sprayer. The circuit court heard evidence indicating there were stronger winds active at this time than when Muhlenkort sprayed Hybertson's field.

[¶8.] The Lindbloms brought a claim for damages against the Defendants based on negligence and trespass theories. The action was tried to the circuit court,

which ruled in favor of the Defendants. The Lindbloms appeal, raising two issues on appeal[2]:

> 1. Whether the circuit court was required to give deference to the Department's determination that Muhlenkort violated SDCL 38-21-44(2).
>
> 2. Whether the evidence is sufficient to sustain the circuit court's determination that Muhlenkort did not commit negligence.

## Standard of Review

[¶9.] "In a bench trial, the circuit court is the finder of fact and sole judge of credibility." *Osman v. Karlen & Assocs.*, 2008 S.D. 16, ¶ 30, 746 N.W.2d 437, 445.

> We will not set aside a circuit court's findings of fact unless they are clearly erroneous. A circuit court's finding is clearly erroneous if, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been made. All conflicts in the evidence must be resolved in favor of the circuit court's determinations. The credibility of the witnesses, the weight to be accorded their testimony, and the weight of the evidence must be determined by the circuit court and we give due regard to the circuit court's opportunity to observe the witnesses and the evidence. . . . On review the successful party is entitled to the benefit of his version of the evidence and of all favorable inferences fairly deducible therefrom.

---

2. The Lindbloms' complaint also alleged trespass against the Defendants. However, the circuit court noted the Lindbloms did not argue their trespass theory at trial or in their brief to that court. "Ordinarily an issue not raised before the trial court will not be reviewed at the appellate level." *Ronan v. Sanford Health*, 2012 S.D. 6, ¶ 14, 809 N.W.2d 834, 837 (quoting *State v. Gard*, 2007 S.D. 117, ¶ 15, 742 N.W.2d 257, 261) (internal quotation marks omitted). Likewise, the Lindbloms have mentioned the word "trespass" only in passing in their briefs to this Court, and then only as an appendage to their negligence claim. Functionally, the Lindbloms have not briefed the issue of trespass to this Court, as is required by SDCL 15-26A-60. Therefore, we consider the issue waived. *See Veith v. O'Brien*, 2007 S.D. 88, ¶ 50, 739 N.W.2d 15, 29 (holding issue waived on appeal "for failure to cite authority in violation of SDCL 15-26A-60(6)").

*State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 26, 785 N.W.2d 272, 281-82

(quoting *In re Estate of Pringle*, 2008 S.D. 38, ¶ 18, 751 N.W.2d 277, 284) (internal

quotation marks omitted).

## Analysis and Decision

[¶10.]     *1.     Whether the circuit court was required to give deference to the Department's determination that Muhlenkort violated SDCL 38-21-44(2).*

[¶11.]     The Lindbloms argue the circuit court should have "give[n] deference

to the Department of Agriculture's investigation and determination of a violation of

SDCL 38-21-44(2)." The Lindbloms claim the Department found that "there was no

doubt that drift had taken place" and that "the damage to Appellants' field came

from the Round-up sprayed on the Hybertson field because the damage was across

the south end." It should be noted at the outset, however, that the first "finding"

referenced by the Lindbloms is a statement appearing only in Sinning's trial

testimony. The second "finding" is actually the circuit court's summary of Sinning's

testimony. The only statement that we see in the record regarding a finding of the

Department itself is its statement in a letter to the Lindbloms that "Jeff

Muhlenkort was found in violation and [sic] SDCL 38-21-44(2), applying a pesticide

inconsistent with the label. The matter was settled with the department by a

payment of $385.00, in lieu of a civil penalty." The settlement agreement entered

into by Muhlenkort and the Department reflects this as well.

[¶12.]     In support of their claim, however, the Lindbloms cite a number of

decisions from other jurisdictions for a proposition embodied in SDCL 1-26-36:

> The court shall give great weight to the findings made and
> inferences drawn by an agency on questions of fact. The court
> may affirm the decision of the agency or remand the case for

> further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced . . . .

This statute clearly contemplates the treatment of agency findings after an appeal has been made from an agency proceeding or adjudication in accordance with SDCL chapter 1-26. However, no administrative hearing or adjudication ever occurred in this matter. Rather, the Department accepted Muhlenkort's payment "in complete settlement of the *potential cause of action* against Muhlenkort." (Emphasis added.) In essence, then, the Lindbloms ask us to adopt a definition of the word "decision" that includes a choice made or conclusion reached by an administrative agency, regardless of whether or not an adversely affected party has had an opportunity to be heard and contest the agency's choice or conclusion. We do not agree with such a broad definition.

[¶13.]    Nevertheless, the Lindbloms cite several cases for the proposition that an administrative agency's "decisions" are entitled to deference. The Lindbloms first direct us to *Anderson v. Minn. Dep't of Natural Res.*, 693 N.W.2d 181 (Minn. 2005). In *Anderson*, commercial beekeepers sued a paper company and the Minnesota Department of Natural Resources for negligence, negligence per se, and nuisance relating to the spraying of pesticides. *Id.* at 185. The defendants supported their motion for summary judgment with the affidavit of the director of the Minnesota Department of Agriculture Pesticide Enforcement Section. *Id.* at 190-91. Although "[t]he district court characterized the testimony of the state agency expert as the agriculture department's 'official position' and noted that 'great deference' routinely was given to agency determinations[,]" *id.* at 191, the Minnesota Supreme Court declined to give deference to the affidavit. The

Lindbloms argue that the Minnesota Supreme Court did not give deference to the director's opinion "because he was not acting in his Department capacity when rendering his decision." The Minnesota Supreme Court, however, noted that "in this case, the expert was not an agency decision-maker engaged in the evaluation of evidence by using his own expertise *in an enforcement proceeding or adjudication*." *Id.* (emphasis added). Thus, the court rejected the notion of deference not because of the lack of an agency investigation, but rather because of the lack of an agency proceeding or adjudication.

[¶14.]     The Lindbloms' other citations are similarly ineffective. The Lindbloms cite *Cox v. U.S. Dep't of Agric.*, 925 F.2d 1102, 1104 (8th Cir. 1991) ("The Department of Agriculture's decision must be upheld if it is supported by substantial evidence."); *Crookston Cattle Co. v. Minn. Dep't of Natural Res.*, 300 N.W.2d 769, 777 (Minn. 1980) ("Agency decisions are presumed correct by the court . . . ."); and *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn. 1977) ("[D]ecisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience."). Each of these cases, like *Anderson*, involves the review of an administrative agency's post-hearing decision or order, not merely the opinion of an agency official offered to prove a private tort action.[3] Therefore we hold the circuit court was not

---

3.     The Lindbloms also cite to *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413-14, 65 S. Ct. 1215, 1217, 89 L. Ed. 1700 (1945); *Minn. Life & Health Ins. Guar. Ass'n v. Dep't of Commerce*, 400 N.W.2d 769, 773 (Minn. Ct. App. 1987); and the unreported case *In re Capitol Am. Life Ins. Co. Fixed Indem.*

(continued . . .)

required to give deference to the Department's pre-hearing determination that Muhlenkort violated SDCL 38-21-44(2).

[¶15.]      2.      *Whether the evidence is sufficient to sustain the circuit court's determination that Muhlenkort did not commit negligence.*

[¶16.]      The Lindbloms argue that Muhlenkort applied the Roundup in a manner inconsistent with the herbicide's label instructions and that doing so was negligent as a matter of law. We have long held that "an unexcused violation of a statute enacted to promote safety constitutes negligence per se." *Thompson v. Summers*, 1997 S.D. 103, ¶ 16, 567 N.W.2d 387, 393 (quoting *Bell v. East River Elec. Power Coop., Inc.*, 535 N.W.2d 750, 755 (S.D. 1995)) (internal quotation marks omitted). SDCL 38-21-44(2) provides, in part:

> The secretary of agriculture, pending inquiry and after opportunity for a hearing, pursuant to chapter 1-26, may deny, suspend, revoke, or modify any provision of any license or certification issued under this chapter, if he finds that the applicant or the holder of a license or certification has . . . [m]ade a pesticide recommendation or application inconsistent with the labeling . . . .

The parties agree that SDCL 38-21-44(2) is a safety statute meant to protect people like the Lindbloms. Therefore we assume without deciding that SDCL 38-21-44(2) is such a safety statute.

---

(. . . continued)
> *Policy Forms, ZN, FR/ZM, JF/JG, FA/FA89, & FB*, No. C4-98-1266, 1999 WL 185197, at *3 (Minn. Ct. App. 1999). The relevance of these cases is even further strained as they address the deference given to an administrative agency's interpretation of either its own regulations or an ambiguous enabling act when that particular agency is tasked with implementing the statutory provisions of the act. The present case does not involve regulatory construction, and no claim has been asserted that SDCL 38-21-44 is in any way ambiguous.

[¶17.]     In order to prove Muhlenkort was negligent as a matter of law, the Lindbloms were required to prove Muhlenkort violated SDCL 38-21-44(2)—i.e., the Lindbloms were required to prove Muhlenkort applied the Roundup contrary to the herbicide's label instructions.  The Lindbloms assert the settlement agreement between Muhlenkort and the Department establishes that Muhlenkort violated SDCL 38-21-44(2).  That agreement reads, in relevant part:

> South Dakota Department of Agriculture . . . and Jeff Muhlenkort . . . hereby agree as follows: . . . *The department's investigation found* that on June 24, 2011, at 8:00 p.m., Muhlenkort made an application of Round-up Weather Max (glyphosate) to corn located south of Mr. Lindblom's conventional corn.  The Beresford automated weather data station indicated the wind on June 24, 2011, at 8 p.m. was southeast at 8 mph with gusts to 14 mph, making the application conducive for drift.  Samples taken from Mr. Lindblom's corn were found to contain residue of glyphosate, the active ingredient used in Round-up Weather Max.

(Emphasis added.)  By their reading, the Lindbloms essentially omit the emphasized portion of the agreement.  As the circuit court correctly concluded, this agreement does not evidence a violation of the statute; instead, it merely indicates Muhlenkort acknowledged that the Department was convinced he violated SDCL 38-21-44(2).

[¶18.]     Absent an admission of a violation of the statute, the question of whether or not Muhlenkort violated SDCL 38-21-44(2) becomes a question for the fact-finder—the circuit court in this case.  As we indicated above, "the successful party is entitled to the benefit of his version of the evidence and of all favorable inferences fairly deducible therefrom."  *Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 26, 785 N.W.2d at 282 (quoting *In re Estate of Pringle*, 2008 S.D. 38, ¶ 18, 751 N.W.2d at 284) (internal quotation mark omitted).  The circuit court found credible

Muhlenkort's testimony that he did not begin spraying Hybertson's field until close to 8:30 p.m. The Defendants presented evidence to the circuit court that wind speeds were less than ten miles per hour by that time. Therefore we are not "left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *In re Estate of Pringle*, 2008 S.D. 38, ¶ 18, 751 N.W.2d at 284). Because there is evidence to support the circuit court's finding that Muhlenkort did not apply the herbicide in a manner "inconsistent with the labeling[,]" SDCL 38-21-44(2), the circuit court did not err in concluding the Lindbloms failed to establish that the Defendants committed negligence as a matter of law.

[¶19.] Nor are we convinced that the circuit court clearly erred in determining Muhlenkort's actions otherwise conformed to an appropriate standard of care. "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Englund v. Vital*, 2013 S.D. 71, ¶ 11, 838 N.W.2d 621, 627 (quoting *Janis v. Nash Finch Co.*, 2010 S.D. 27, ¶ 8, 780 N.W.2d 497, 500) (internal quotation marks omitted). The circuit court noted that Muhlenkort's testimony regarding the wind conditions at the time he applied the herbicide was consistent with wind data submitted to the court. Muhlenkort continually monitored the wind conditions throughout the day. Prior to spraying the herbicide, Muhlenkort dropped smoke to visually confirm the herbicide would not drift outside of Hybertson's field. Additionally, Muhlenkort utilized an anti-drift agent.

[¶20.] On the other hand, the Lindbloms did not present any evidence to refute the wind data provided by the Defendants, and the circuit court did not find Trudeau's testimony persuasive. Trudeau—a business competitor to Muhlenkort—

observed Muhlenkort from his car while driving as far as a half mile away from where Muhlenkort was spraying. Trudeau did not claim that he actually saw chemical drift onto the Lindbloms' field. Trudeau also admitted that he did not know if Muhlenkort had already sprayed the north end of Hybertson's field at the time Trudeau observed him. In other words, Trudeau could not positively say that what he thought was chemical drifting toward the north end of the field after having been sprayed further south was not simply chemical that had been sprayed at the north end of the field—without drifting—in the first place. Furthermore, the circuit court was presented with evidence that the grass growing in the ditch between the Lindbloms' field and the road did not appear to be damaged, despite Sinning's theory that this same grass shielded the first few rows of the Lindbloms' field from the herbicide spray.

[¶21.] Additionally, the Defendants presented the circuit court with plausible, alternative explanations for the damage to the Lindbloms' corn. Most notably, the Lindbloms hired Trudeau to apply the very same herbicide to their soybean field—located immediately adjacent to the cornfield—almost a week prior to Sinning's inspection on July 6. Even though the Lindbloms and Trudeau claim the damage to the corn became apparent prior to Trudeau's application of Roundup to the soybean field, they did not introduce evidence of how much glyphosate is required to damage or kill corn. Therefore, Trudeau's application of the herbicide to the soybean field can potentially explain the presence of glyphosate in the Lindbloms' cornfield even if the circuit court believed that the damage manifested prior to Trudeau's application of the herbicide. The court also heard evidence

regarding the earlier application of the Verdict herbicide in June, as well as evidence regarding the moisture conditions of the Lindblom cornfield. The circuit court was entitled to weigh all of this information in performing its function as the fact finder.

[¶22.] Even if the Lindbloms' assertion that "[t]here is simply no other explanation for the damage to Appellants' corn" is correct, we have said, "The mere fact an accident happened creates no inference that it was caused by someone's negligence." *Baddou v. Hall*, 2008 S.D. 90, ¶ 27, 756 N.W.2d 554, 561 (quoting *Steffen v. Schwan's Sales Enters., Inc.*, 2006 S.D. 41, ¶ 9, 713 N.W.2d 614, 618) (internal quotation marks omitted). The Lindbloms were required to prove more than damage to their corn or the mere presence in their field of the same type of herbicide sprayed on Hybertson's field; they were required to prove Muhlenkort negligently sprayed herbicide. Because there is evidence to support the circuit court's conclusion that Muhlenkort was not negligent, the court did not err in concluding the Lindbloms failed to sustain their burden.

**Conclusion**

[¶23.] The Department's pre-hearing determination that Muhlenkort violated SDCL 38-21-44(2) was not a "finding" entitled to deferential treatment, and Muhlenkort's agreement to settle with the Department in order to avoid litigation was not an admission of guilt. Consistent with the standard of review in this case, we have said, "It is not our role on appeal to retry this case or substitute our judgment as to credibility and weight of the evidence. This Court defers to the circuit court because of its ability to observe the witnesses." *Hubbard v. City of*

*Pierre,* 2010 S.D. 55, ¶ 27, 784 N.W.2d 499, 511.  There was sufficient evidence for the circuit court to conclude Muhlenkort did not apply the herbicide in a manner inconsistent with its label requirements, or otherwise negligently.  Therefore, the circuit court did not err, and the Lindbloms were not entitled to recover damages.  We affirm.

[¶24.]       ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.