#26588-a-DG

**2014 S.D. 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

SEAN WHISTLER,                            Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RANDALL L. MACY
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


G. MATTHEW PIKE of
Lawrence County Public
  Defender's Office
Deadwood, South Dakota                    Attorneys for defendant
                                          and appellant.


* * * *

                                          ARGUED ON MARCH 24, 2014
                                          REASSIGNED APRIL 18, 2014
                                          OPINION FILED **07/30/14**

GILBERTSON, Chief Justice (on reassignment).

[¶1.]         Defendant appeals his convictions for possession of a controlled substance in violation of SDCL 22-42-5 (2012) and ingestion of a substance for the purpose of becoming intoxicated in violation of SDCL 22-42-15.  He challenges South Dakota's statutory scheme defining a controlled substance to include an altered state of a drug or substance absorbed into the human body.  He also alleges insufficient evidence to prove venue, and asserts error in the circuit court's jury instructions.  We affirm.

## Background

[¶2.]         On March 9, 2012, Spearfish Police Officer Aaron Jurgenson, followed by Officer Colin Simpson, saw a pickup traveling on Main Street in Spearfish during the early morning hours with only its running lights on.  The officers initiated a traffic stop.  Officer Jurgenson approached the pickup and identified the driver as Sean Whistler.  Dispatch reported that Whistler's driver's license was suspended.  Officer Jurgenson asked Whistler to speak with him in his patrol car.  Once in the car, the officer observed signs of alcohol consumption and smelled the odor of marijuana.  After Whistler failed certain sobriety tests, Officer Jurgenson placed him under arrest for driving under the influence, possession of marijuana, and possession of drug paraphernalia.  A search of Whistler's person incident to arrest uncovered a bag of marijuana in one of Whistler's pants pockets and loose marijuana leaves in Whistler's coat pocket.  Officer Simpson later conducted an inventory search of Whistler's pickup, during which he seized marijuana leaves and a package of rolling papers.

[¶3.] At the police station, Whistler provided urine and blood samples. The test of his blood sample revealed a blood alcohol content of .221. A grand jury indicted Whistler for alternative counts of driving while under the influence of alcohol or driving with .08 percent or more by weight of alcohol in the blood, possession of marijuana, and ingestion of a substance other than alcohol for the purpose of becoming intoxicated. After the results of the urinalysis revealed the presence of a metabolite of cocaine, a superseding indictment added the charges of possession of a controlled substance (cocaine) and possession of a suspended license.

[¶4.] At the jury trial, Officers Jurgenson and Simpson testified about the stop. Forensic examiner Richard Wold testified that the plant material retrieved from Whistler's person and pickup tested to be marijuana. Forensic chemist Kathryn Engle told the jury that Whistler's urine tested positive for the presence of the metabolites of marijuana and cocaine. She said that Whistler's urine sample contained 0.90 micrograms per milliliter of benzoylecgonine, the major metabolite of cocaine. She explained that this cocaine metabolite could remain inside the body for approximately three days and that it is impossible to determine from a urinalysis how long ago someone had ingested the cocaine.

[¶5.] At the close of the State's case, Whistler moved for a judgment of acquittal on all charges. The court granted Whistler's motion on the charges of driving under suspension and possession of drug paraphernalia. During the settling of the jury instructions, Whistler objected to Instruction 13, which stated: "Possession occurs if a person knowingly possesses an altered state of a drug or substance absorbed into the human body," and to Instruction 17, which stated: "In a

charge of knowing possession of a controlled substance, a positive urinalysis that reveals the presence of a controlled substance in a defendant's urine may be sufficient in and of itself to support a conviction." The court denied Whistler's objections and submitted the case to the jury. The jury returned a verdict of guilty on all counts. The court sentenced Whistler to four years in prison, suspended upon serving eighty days in jail and abiding by certain terms and conditions.

[¶6.] On appeal, Whistler asserts that prosecution for possession in violation of SDCL 22-42-5 (2012), based solely on the presence of a metabolite of a controlled substance in urine, is contrary to legislative intent. He believes an ingestion conviction precludes a possession conviction on the same substance and constitutes double jeopardy. He also contends that the State failed to prove venue. Finally, Whistler argues that the court committed reversible error in instructing the jury, because Whistler asserts that Instructions 13 and 17 removed the State's burden of proving that Whistler knowingly possessed a controlled substance.

## Analysis and Decision

[¶7.] Whistler first argues that South Dakota's ingestion statute, SDCL 22-42-15, precludes a conviction for possession under SDCL 22-42-5 (2012) when the only evidence is a positive urinalysis. Statutory construction is a question of law reviewed de novo. *State v. Schroeder*, 2004 S.D. 21, ¶ 5, 674 N.W.2d 827, 829 (citation omitted). Whistler concedes that we specifically held in *Schroeder* that a defendant could be convicted of unauthorized possession of a controlled substance when the only evidence of possession is from the ingested or absorbed substance in the defendant's urine. *See id*. ¶ 14. Yet he claims that *Schroeder* did not address

the specific issue he presents for review: whether a conviction for ingestion precludes a conviction for possession. *See id.* ¶ 9 ("There is still no need to decide this related issue of whether an ingestion statute precludes a conviction for possession when the only evidence is a positive urinalysis."). Therefore, Whistler asserts that *Schroeder* need not be overruled to decide this issue. In support of his claim that a conviction for ingestion precludes a conviction for possession, Whistler cites cases from other jurisdictions. He contends that South Dakota is the only state in the nation that makes the crime of possession by ingestion a felony and that doing so "bends decades of common law rule beyond its breaking point."

[¶8.] It is within the province of the Legislature to define what conduct constitutes a crime in this State. *State v. Burdick*, 2006 S.D. 23, ¶ 18, 712 N.W.2d 5, 10. "We pass only on the permissible scope of legislative regulation, not its wisdom." *Meinders v. Weber*, 2000 S.D. 2, ¶ 28, 604 N.W.2d 248, 260. Indeed, "[t]he separation of powers would be meaningless if the judiciary were able to create exceptions to a criminal law based upon its notion of fairness." *Burdick,* 2006 S.D. 23, ¶ 18, 712 N.W.2d at 10. Here, the Legislature clearly and unambiguously defined the crime of unauthorized possession of a controlled substance under SDCL 22-42-5 (2012) to include the possession of "an altered state of a drug or substance listed in Schedules I through IV absorbed into the human body[.]" SDCL 22-42-1(1).

[¶9.] Still, Whistler insists that the Legislature never intended SDCL 22-42-5 (2012) to allow prosecution for possession based solely on the presence of a metabolite in the human body, and therefore, his conviction should be reversed. He directs us to a record of the hearing before the Judiciary Committee of the South

#26588

Dakota House of Representatives related to the 2001 amendment. Relying on this record, Whistler asks us to reinterpret what the Legislature meant when it amended SDCL 22-42-1(1) in 2001. "This Court does not, however, review legislative history when the language of the statute is clear." *Bertelsen v. Allstate Ins. Co.*, 2009 S.D. 21, ¶ 15, 764 N.W.2d 495, 500 (citing *Clark Cnty. v. Sioux Equip. Corp.*, 2008 S.D. 60, ¶ 28, 753 N.W.2d 406, 417). Because a plain reading of the statutes at issue reveals that nothing precludes a conviction of unauthorized possession when the controlled substance is ingested and thereby absorbed into the human body, we reject Whistler's argument.

[¶10.]     Whistler also contends that he faced double jeopardy by being convicted of both possession of a controlled substance, by way of an altered state of cocaine absorbed into the body,[1] and ingestion of a substance other than alcohol for the purposes of becoming intoxicated.[2] He argues that both of these convictions rested upon the same evidence: the presence of a metabolite of cocaine in his body. However, at trial, the jury heard evidence that Whistler smelled of marijuana, that loose marijuana leaves were on his person and in his pickup, and that his urine tested positive for the metabolite of marijuana. The jury could have concluded that Whistler ingested marijuana, a conclusion that would not preclude a separate conviction for possession of the metabolite of cocaine. Hence, we need not address

---

1.     SDCL 22-42-5 (2012); SDCL 22-42-1(1).

2.     SDCL 22-42-15.

in this case whether convicting a defendant of both possession and ingestion of cocaine, stemming from a single act of ingesting cocaine, violates the constitutional prohibition against double jeopardy. *See generally Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[¶11.]     Whistler next argues that venue for the crime of unauthorized possession cannot be proved by the mere presence of a metabolite of a controlled substance in one's urine, and therefore, the State presented insufficient evidence that he possessed cocaine in Lawrence County, South Dakota. He contends that the Legislature was without authority to statutorily create venue for the crime of ingestion to include where the substance was detected in the body. *See* SDCL 22-42-15.

[¶12.]     In all criminal prosecutions, the defendant has a constitutional right to be tried by a jury in the county where the crime was alleged to have been committed. S.D. Const. art VI, § 7; SDCL 23A-16-3 (Rule 18). Venue must be shown by the evidence and need only be demonstrated by a preponderance of the evidence. *See State v. Iwan*, 2010 S.D. 92, ¶¶ 8-9, 791 N.W.2d 788, 789 (citing *State v. Greene*, 86 S.D. 177, 192 N.W.2d 712, 183 (1971)). Here, because a controlled substance is defined to include the altered state of a drug absorbed into the human body, venue was established for the crime of unauthorized possession in violation of SDCL 22-42-5 (2012) through the evidence that Whistler possessed the altered state of cocaine absorbed into his body in Lawrence County, South Dakota. Venue was also established for the crime of intentional ingestion of a substance for purposes of becoming intoxicated in violation of SDCL 22-42-15, because the odor of marijuana

was detected on Whistler in Lawrence County, he possessed marijuana leaves on his person in Lawrence County, and the metabolite of marijuana was detected in his urine.

[¶13.]     Finally, Whistler argues that the trial court erred in submitting Instructions 13 and 17 to the jury. "A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard." *State v. Hauge*, 2013 S.D. 26, ¶ 17, 829 N.W.2d 145, 150 (quoting *State v. Roach,* 2012 S.D. 91, ¶ 13, 825 N.W.2d 258, 263). "However, no court has discretion to give incorrect, misleading, conflicting, or confusing instructions[.]" *State v. Zephier*, 2012 S.D. 16, ¶ 9, 810 N.W.2d 770, 772 (quoting *Fix v. First State Bank of Roscoe,* 2011 S.D. 80, ¶ 10, 807 N.W.2d 612, 615-16). To constitute reversible error, an instruction must be shown to be both erroneous and prejudicial, such that "in all probability they produced some effect upon the verdict and were harmful to the substantial rights of a party." *State v. Cottier*, 2008 S.D. 79, ¶ 7, 755 N.W.2d 120, 125 (citation omitted). Accordingly, "jury instructions are to be considered as a whole, and if the instructions when so read correctly state the law and inform the jury, they are sufficient. This is a question of law reviewed de novo." *State v. Waloke*, 2013 S.D. 55, ¶ 28, 835 N.W.2d 105, 113 (citation omitted).

[¶14.]     Whistler asserts that Instruction 13 misquotes and significantly deviates from the legal standard in *Schroeder*, and therefore constitutes reversible error. *See* 2004 S.D. 21, 674 N.W.2d 827. Instruction 13 stated, "Any person who knowingly possesses a controlled drug or substance is guilty of a crime. Possession

occurs if a person knowingly possesses an altered state of a drug or substance absorbed into the human body." This Court in *Schroeder* stated that "possession may now occur if a person knowingly possesses 'an altered state of a drug or substance absorbed into the human body.'" *Id.* ¶ 14 (citing SDCL 22-42-1(1); SDCL 22-42-5). Whistler argues that Jury Instruction 13 improperly changed the permissive language of "possession may now occur" found in *Schroeder* to an implied mandatory directive to the jury. *See id.*

[¶15.] Whistler's argument on this point misconstrues the context of the quoted language in *Schroeder*. When we used the phrase "may now occur," we were not describing whether a jury was permitted or mandated to reach a certain verdict, as Whistler asserts. Instead, we were explaining that an amendment to the definition of "controlled drug or substance" created two potential ways in which possession occurred. *See id.*; 2001 S.D. Sess. Laws ch. 116, § 1 (adding altered state of enumerated drugs or substances absorbed into body to definition of "[c]ontrolled drug or substance"). The word "may" expressed possibility of criminal activity by the defendant, not permissiveness of action by the jury. As in, it is *possible* for possession to occur one of two ways—possession of the substance itself or possession through absorption of an altered state of the drug in the body. A plain reading of SDCL 22-42-1(1) and SDCL 22-42-5 (2012), as they were written at the time of

Whistler's conviction[3] reveals that Jury Instruction 13 correctly stated the elements of possession of a controlled substance.[4]

[¶16.] Whistler also asserts that Instruction 17 misstated the law and created reversible error by removing the State's burden of proving the *mens rea* element of "knowing" possession. Instruction 17 stated: "In a charge of knowing possession of a controlled substance, a positive urinalysis that reveals the presence of controlled substances in a defendant's urine may be sufficient in and of itself to support a conviction." Whistler argues that the phrase "in and of itself" replaces the State's burden of proving knowing possession with simply proving presence of a metabolite in Whistler's body. In response, the State contends that the court's instructions taken as a whole accurately state the law. We agree.

[¶17.] First, we note that Instruction 17 does not facially misstate the law. *Cf. State v. Evans*, 12 S.D. 473, 81 N.W. 893 (1900) (remanding where instruction stated wrong burden of proof). We have never held that a positive urinalysis, as a

---

3.    SDCL 22-42-5 (2012) read:

> No person may knowingly possess a controlled drug or substance unless the substance was obtained directly or pursuant to a valid prescription or order from a practitioner, while acting in the course of the practitioner's professional practice or except as otherwise authorized by chapter 34–20B. A violation of this section is a Class 4 felony.

SDCL 22-42-1(1) defines controlled drug or substance to include "an altered state of a drug or substance listed in Schedules I through IV absorbed into the human body[.]"

4.    It would be incorrect to state that "knowingly possessing an altered state of a drug or substance absorbed into the body *may* be a crime." That act *is* a crime—as clearly defined by the Legislature. SDCL 22-42-1(1); SDCL 22-42-5 (2012).

matter of law, mandates a conviction for knowing possession. However, Jury Instruction 17 did not say that a positive urinalysis mandates a conviction for knowing possession of a controlled substance, as a matter of law. Instead, the instruction set forth the law with respect to the sufficiency of evidence necessary to support a conviction for knowing possession of a controlled substance. In *State v. Mattson*,[5] we stated that "in the context of a charge of knowing possession of a controlled substance, a positive urinalysis that reveals the presence of a controlled substance in a defendant[']s urine is sufficient in and of itself to support a conviction due to the language of SDCL 22-42-1(1)." 2005 S.D. 71, ¶ 54, 698 N.W.2d 538, 554. *See id.* ¶ 57, 698 N.W.2d at 555 (also holding that "refusal to provide a urine sample was sufficient to support an inference of knowing possession through ingestion"). Instruction 17 used nearly identical language—that a positive urinalysis "may be sufficient in and of itself to support a conviction" for possession—to inform the jury of this legal concept. *See id.* ¶ 54, 698 N.W.2d at 554. Accordingly, we cannot conclude that the instruction misstated the law.

[¶18.]     Unlike other cases where this Court has found reversible error, this is not a case where the jury instructions as a whole never included the necessary *mens rea* element. *Cf. State v. Jones*, 2011 S.D. 60, ¶ 15, 804 N.W.2d 409, 414 (reversing and remanding conviction for failure to include *mens rea* element in jury instructions). Nor does Instruction 17 contradict the other instructions given as to the burden of the State or the required elements of the crime. *Cf. Evans*, 12 S.D.

---

5.     The trial court relied on *Schroeder* as supporting the pattern instruction, but the language of the instruction more closely reflects that in *Mattson*.

473, 81 N.W. 893.[6] Instruction 17 addressed but one aspect of the law, i.e., that the jury was permitted to find Whistler guilty even if the State could not produce evidence of actual drugs seized. Viewed in isolation, this lone rule of law presented in Instruction 17 gives an incomplete statement of the law under which to convict a defendant. Yet, our precedent clearly indicates that each individual instruction need not apprise the jury of the whole of the law. Rather, we examine the instructions as a whole to determine whether they accurately reflect the law. *See Waloke*, 2013 S.D. 55, ¶ 28, 835 N.W.2d at 113; *Cottier*, 2008 S.D. 79, ¶ 7, 755 N.W.2d at 125; *State v. Eagle Star*, 1996 S.D. 143, ¶ 13, 558 N.W.2d 70, 73; *State v. Olson*, 408 N.W.2d 748, 753 (S.D. 1987).

[¶19.] The jury in this case was instructed that they must consider the instructions as a whole.[7] As a whole, the jury instructions thoroughly informed the jury of the *mens rea* requirement and that the State bore the burden of proving every element of the crime. Jury Instruction 2 instructed the jury that "[t]he state has the burden of proving every element of the offense charged beyond a reasonable

---

6. In *Evans*, this Court reversed and remanded a conviction for grand larceny, because the jury was given two plainly contradicting instructions. The first stated that the defendant was "presumed to be innocent of the charge of grand larceny until his guilt is established by the state to your satisfaction, by a preponderance of the evidence." 12 S.D. at 473, 81 N.W. at 893-94. The jury was also instructed that they "must be satisfied of the guilt of the accused beyond a reasonable doubt[.]" *Id.* at 473, 81 N.W. at 894.

7. Instruction 4 stated in part, "You must accept and apply the law as stated in these instructions which you must consider as a whole. You should not disregard any instruction, or give special attention to any one instruction, or question the validity of any rule of law."

doubt." Jury Instruction 15 set forth those elements:

> The elements of the crime of possession of a controlled drug or substance, namely cocaine, each of which the state must prove beyond a reasonable doubt, are that, at the time and place alleged:
>
> 1. The defendant knowingly possessed the controlled drug or substance cocaine.
>
> 2. The drug or substance was not obtained directly pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice.

Jury Instruction 16 reiterated the *mens rea* element, stating that the "defendant must be shown to have *knowingly* been in possession of cocaine." (emphasis added). Jury Instruction 13 also instructed the jury that possession required the person to "knowingly possess[ ] an altered state of a drug or substance absorbed into the human body." Taken together, these instructions sufficiently informed the jury that the State was required to prove each element of the crime, including the *mens rea*, beyond a reasonable doubt. Because the jury was sufficiently instructed, we conclude the challenged jury instructions did not create reversible error.

## Conclusion

[¶20.]     For the above stated reasons, we affirm the trial court's decision on all issues.

[¶21.]     WILBUR, Justice, concurs.

[¶22.]     ZINTER, Justice, concurs specially.

[¶23.]     KONENKAMP and SEVERSON, Justices, dissent.

#26588

ZINTER, Justice (concurring specially).

[¶24.]     I join the opinion of the Court. I write only to address the dissent's contention that Instructions 13 and 17 were irreconcilable on the requirement of proving knowing possession.

[¶25.]     As the Court points out, Instruction 13 (as well as Instructions 2, 15, and 16) required the State to prove that Whistler *knowingly* possessed the controlled drug or substance. The dissent, however, contends that Instruction 17 contradicted Instruction 13 by "eliminat[ing] the State's burden of proving that the possession was knowing." *See infra* Dissent ¶ 29. The dissent describes Instruction 17 as eliminating the knowledge requirement because the instruction indicates "'that [a positive urinalysis] may be sufficient in and of itself' to prove . . . knowing[] ingest[ion of] the . . . substance[]." *See infra* Dissent ¶ 29. The dissent mischaracterizes Instruction 17.

[¶26.]     Contrary to the dissent's characterization, Instruction 17 did not indicate that a positive urinalysis proved the "knowing possession" *element* of the offense. Instruction 17 provided that "[i]n a charge of knowing possession of a controlled substance, a positive urinalysis that reveals the presence of controlled substances in a defendant's urine *may* be sufficient in and of itself *to support a conviction*." (Emphasis added.) The permissive words of the instruction—"may . . . support a conviction"—indicated that the presence of controlled substances may, but did not necessarily, support a conviction.

[¶27.]     Instruction 17 did not mention, and therefore did not link, a positive urinalysis with any element of the offense. Therefore, it did not give "the jury the

-13-

option of disregarding an essential element of the offense." *See infra* Dissent ¶ 31. Instruction 17 was silent on proof of the elements of the offense. As the Court points out, Instructions 2, 13, 15, and 16 identified and specifically required the jury to find proof of the elements of the offense, including knowing possession, beyond a reasonable doubt. Permissive Instruction 17 did not contradict these four mandatory instructions.

[¶28.]      When correctly characterized and considered together, the instructions were complementary rather than irreconcilable. I therefore join the opinion of the Court.


KONENKAMP, Justice (dissenting).

[¶29.]      Diligent jurors following the trial court's instructions in this case could reasonably conclude that, based solely on a positive urinalysis, the law allows a conviction for knowing possession of a controlled substance, even if the jurors hold a reasonable doubt whether the defendant knowingly ingested that substance. The court told the jury in Instruction 17: "In a charge of *knowing possession* of a controlled substance, a positive urinalysis that reveals the presence of controlled substances in a defendant's urine may be sufficient *in and of itself* to support a conviction." (Emphasis added.) Imagine applying this rule in any other context: a positive urinalysis proves that victims of date rape drugs *knew* they were taking incapacitating drugs and that diners stricken with food poisoning *knew* they were eating contaminated food. If the substances were found in their bodies, then, to parrot the court's instruction, "that may be sufficient in and of itself" to prove they

knowingly ingested the harmful substances. This instruction eliminated the State's burden of proving that the possession was knowing. Possession of a controlled substance thus became a strict liability offense.

[¶30.] Two instructions here were irreconcilable. Instruction 13 informed the jury that "Possession occurs if a person *knowingly possesses* an altered state of a drug or substance absorbed into the human body." (Emphasis added.) Instruction 17 then contradicted Instruction 13, telling the jury that the presence of a controlled substance in the urine "may be sufficient in and of itself to support a conviction" for "the charge of knowing possession." A positive urinalysis can indeed prove the presence of a substance in the body, but it cannot "in and of itself" prove knowing possession. And simply because this language was extracted from our opinion in *Mattson*, does not mean it was proper to use it as a jury instruction. 2005 S.D. 71, ¶ 54, 698 N.W.2d at 554.

[¶31.] Jurors are, of course, required to consider the instructions as a whole, and error cannot be predicated upon a single instruction that might be objectionable when considered in isolation. Yet many courts, including ours, have long held that when instructions as a whole conflict, such constitutes prejudicial error. *State v. Moschell*, 2004 S.D. 35, ¶ 54, 677 N.W.2d 551, 567 (citation omitted); *State. v. Evans*, 12 S.D. 473, 81 N.W. 893, 894 (1900). Instruction 17 directly linked Whistler's positive urinalysis to a conviction for *knowing* possession. It gave the jury the option of disregarding an essential element of the offense. The instruction began with, "In a charge of *knowing* possession . . . ," and then told the jury that it may convict Whistler of that charge — *knowing* possession — based solely on the

positive urinalysis, not because the jury believed that the State had met its burden of proof. The instruction was "incorrect, misleading, conflicting, [and] confusing," and our Court errs in not reversing and remanding for a new trial. *See State v. Packed*, 2007 S.D. 75, ¶ 17, 736 N.W.2d 851, 856 (citations omitted).

[¶32.]     SEVERSON, Justice, joins this dissent.