#27158-a-LSW
**2015 S.D. 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STEVE SCHULTZ, MARK SCHULTZ,
DAVID SCHULTZ, and THE SCHULTZ
FAMILY TRUST, as Stockholders of
Cosmos of the Black Hills, Inc., a South
Dakota Corporation, and as individuals,
and DONALD SCHULTZ and ELOISE
SCHULTZ as Trustees of the SCHULTZ
FAMILY TRUST, and DAVID SCHULTZ,
as a Director of Cosmos of the Black Hills, Inc.
on behalf of Cosmos of the Black Hills, Inc.
a South Dakota Corporation,                    Plaintiffs and Appellants,

        v.

LYLE SCANDRETT and HEIDI BYBEE,              Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT GUSINSKY
Judge

\* \* \* \*

REBECCA L. MANN
DAVID E. LUST of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                     Attorneys for plaintiffs
                                             and appellants.


JEFFREY G. HURD of
Bangs, McCullen, Butler, Foye
  & Simmons, LLP
Rapid City, South Dakota                     Attorneys for defendants
                                             and appellees.

\* \* \* \*

                                    ARGUED ON APRIL 21, 2015
                                    OPINION FILED **06/24/15**

#27158

WILBUR, Justice

[¶1.] This is a dispute between two families of shareholders owning stock in Cosmos of the Black Hills, Inc. ("Cosmos"). The Schultzes, the minority shareholders, brought an action against the Scandretts, the majority shareholders, alleging breach of fiduciary care, breach of fiduciary loyalty, minority shareholder oppression, and request for accounting. The jury rendered a verdict in favor of the Scandretts on the breach of fiduciary duty claims and the circuit court issued findings of fact and conclusions of law in favor of the Scandretts on the remaining claims. The Schultzes appeal. We affirm.

## Background

[¶2.] Cosmos, an optical illusion tourist business, is a corporation organized and existing under the laws of the State of South Dakota. Plaintiffs are minority shareholders of Cosmos. The individual Plaintiffs are members of the same family (collectively, "Schultzes"). Don Schultz is married to Eloise Schultz, and they have four sons: Steve, Mark, David, and Matt. Matt is not a party to this action. Defendants, Lyle Scandrett and Heidi Bybee, are members of the same family (collectively, "Scandretts"). Lyle is Heidi's father. Lyle and his wife, Marlene Scandrett, along with Heidi and her husband, Kevin Bybee, are the majority shareholders. Marlene and Kevin are not parties to this action.

[¶3.] In the early 1950s, Don constructed and opened Cosmos. The premise of Cosmos is simple: a customer purchases a ticket; walks on an approximately 30–minute, guided tour; and returns to the gift shop where souvenirs can be purchased. Initially, Cosmos was operated by either Don and Eloise or Don's parents, Fred and

-1-

Marie Schultz. Don stopped working at Cosmos after the summer of 1958. In 1959, the business was incorporated with Don holding 1,500 shares and his parents holding 1,500 shares.

[¶4.] Lyle began working at Cosmos as a tour guide in 1957. Lyle taught school in Wessington, South Dakota, but worked at Cosmos during the summers from 1957 through 1959. In 1960, Schultzes hired Lyle to manage Cosmos and issued him one share of stock to ensure his status as a shareholder. After Cosmos hired Lyle as manager, Cosmos issued an additional 50 shares to Don. In 1968, Lyle and Marlene purchased all of the shares owned by Fred and Marie. As a result, Don and Eloise owned 1,550 shares and Lyle and Marlene owned 1,501 shares out of the total 3,051 outstanding shares.

[¶5.] Until 1969, Cosmos paid Lyle $5,000 to manage Cosmos from Memorial Day to Labor Day each year. In 1969, Don entered into an incentive compensation agreement with Lyle ("Compensation Agreement"), whereby Lyle agreed to work at Cosmos throughout the entire year, instead of only part of the year, in exchange for a new compensation plan. The Compensation Agreement had two goals: first, "to keep the Cosmos open as early and as late as possible to 'protect the property and the business from freeloaders' and 'malicious mischief[;]'" second, "to provide additional income to [Lyle]." In the Compensation Agreement, Lyle's salary was reduced from $5,000 to $2,500 per year. The decrease in salary, however, was offset by Cosmos's agreement that Lyle would receive most of the income during the "off-season," i.e., between Labor Day and Memorial Day. The Compensation Agreement provided that if Lyle was willing to operate Cosmos

during the off-season, then he could keep all of the ticket income less $5 per day for operating expenses and less any employee wages incurred in the off-season operations. Lyle also received one-half of the net souvenir sales income after Labor Day and before Memorial Day. The Compensation Agreement is still in effect today, with two adjustments: Lyle's salary has been increased to $10,000 per year, and Lyle now pays all off-season expenses, rather than just $5 per day.

[¶6.] In 1972, Lyle expressed concern to Don that if he continued to work as a minority shareholder, Don and Eloise's sons could grow up, take control of Cosmos, and terminate Lyle. In response, Don agreed to grant Lyle a controlling interest in Cosmos for the purpose of ensuring that Lyle would remain in control of the company, thereby protecting his employment arrangement. Don and Eloise decided it was important to retain Lyle because "[w]ith the passage of time it became clear that the continued success of the business was due to the efforts of Lyle, as none of the Schultz family was contributing anything more than moral support." In August 1972, Cosmos issued 100 additional shares to Lyle. As a result, Schultzes owned 1,550 shares, and Scandretts owned 1,601 shares. That difference still exists today.

[¶7.] Scandretts have been the majority shareholders since 1972. Schultzes held two of the three board of directors' seats from Cosmos's incorporation in 1959 until 2008. In 2008, Heidi was elected to the board of directors. Thereafter, the board consisted of Lyle, Heidi, and David. Over the years, Don and Eloise gifted some of their shares to their children: Steve, Mark, David, and Matt. In 2004, Lyle condensed the corporate minutes into a document entitled the "Historical Record."

The Historical Record outlined the Compensation Agreement. That same year, Don, Eloise, and David signed a "Shareholders Attachment" that indicated they were shareholders of Cosmos, that they had read the Historical Record, and that they were satisfied with the Historical Record as written, thereby ratifying the Compensation Agreement. In 2009, Don and Eloise assigned their stock to the Schultz Family Trust. Don acted as the agent for Schultzes in handling matters relating to Cosmos. Until the fall of 2008, Don had always been the member of the Schultz family who communicated with Lyle regarding Cosmos. Don told Lyle that Cosmos was doing well under Lyle's leadership and that Schultzes were indebted to Lyle for the success of Cosmos. Prior to the current dispute, Schultzes did not express to Lyle any dissatisfaction with his management of Cosmos. Since 1989, the dividends paid to Schultzes have increased by an average of 17.84% per year, totaling over $3 million.

[¶8.]        In 2005, the shareholders discussed whether to add restrooms and expand the gift shop. Discussions for this project spanned several years. In 2008, the shareholders discussed the plans for the gift shop and the addition of a new deck. The shareholders agreed that Heidi should plan the construction of the gift shop and deck. When the bids for the project came back higher than expected, David Schultz expressed concern to Heidi about the cost of the project. Heidi restructured the expansion and reduced the cost by a third. Schultzes continued to oppose the expansion. In a letter to Lyle and Heidi from Steve Schultz, Steve stated, "I am appalled by the way this situation has been managed and by the way you have treated my parents. This is unacceptable; you need to change your

approach or prepare yourselves for a long, painful sequence of shareholder disputes." At a board of directors meeting on November 3, 2008, David Schultz said in a written statement, "[S]teve is wealthy, he is tenacious, and he enjoys confrontation. [Don] has held him back for 30 years; Steve will fight you to his last breath and leave instruction in his will to keep the fight going beyond his lifetime." Ultimately, the directors voted to approve a plan to expand the gift shop and restrooms, with Lyle and Heidi voting in favor and David voting against.

[¶9.]     In 2008, Don asked Lyle why dividends had decreased from the previous year. For the first time, Lyle disclosed to Schultzes information about his, Heidi's, and Kevin's compensation from Cosmos. Schultzes had never requested this information from Scandretts. Scandretts point out that "[t]he information was always available." After receiving this information, Schultzes began asking questions about management compensation and the financial position of Cosmos. At the 2009 board of directors' meeting, David made a motion to set the manager's salary for the entire year at $60,000 and eliminate the off-season bonus. The motion failed for lack of a second.

[¶10.]     On September 21, 2011, Schultzes filed the present action against Scandretts alleging breach of fiduciary care, breach of fiduciary loyalty, minority shareholder oppression, and request for accounting. Schultzes claimed that the Compensation Agreement was adverse to the best interests of Cosmos and the shareholders. They further contended that while Lyle's compensation has increased dramatically, his management responsibilities have decreased upon the hiring of Heidi and Kevin and other hourly employees. Finally, Schultzes argued that

Scandretts engaged in self-dealing, misused corporate assets, paid themselves unjustified salaries and benefits, and acted in bad faith against Cosmos and its shareholders.

[¶11.]     This case was tried from May 7 to May 9, 2014.  The fiduciary duty claims were tried to the jury, while the oppression and accounting claims were tried to the circuit court.  The jury returned a verdict in favor of Scandretts on the fiduciary duty claims.  On July 1, 2014, the circuit court issued findings of fact, conclusions of law, and a judgment in favor of Scandretts on the remaining claims.  Schultzes appeal and raise the following issues for our review:

1.     Whether the circuit court erred when it instructed the jury that "South Dakota law does not allow a shareholder to use the fiduciary duty concept to rewrite an original deal he or she made with the corporation."

2.     Whether the circuit court erred when it declined to instruct the jury on employment-at-will concepts and that officers and directors have a duty to terminate a contract entered into by the corporation if the contract becomes against the best interests of the corporation.

3.     Whether the circuit court erred when it declined to instruct the jury that directors owe a fiduciary duty of undivided and unselfish loyalty to the corporation.

**Standard of Review**

[¶12.]     "A trial court has discretion in the wording and arrangement of its jury instructions[.]" *Vetter v. Cam Wal Elec. Coop., Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615.  But "no court has discretion to give incorrect, misleading, conflicting, or confusing instructions." *State v. Whistler*, 2014 S.D. 58, ¶ 13, 851 N.W.2d 905, 910 (quoting *State v. Zephier*, 2012 S.D. 16, ¶ 9, 810 N.W.2d 770, 772).  Thus, "we generally review a trial court's decision to grant or deny a particular instruction

under the abuse of discretion standard." *Id.* (quoting *State v. Hauge*, 2013 S.D. 26,

¶ 17, 829 N.W.2d 145, 150). "To constitute reversible error, an instruction must be

shown to be both erroneous and prejudicial, such that 'in all probability they

produced some effect upon the verdict and were harmful to the substantial rights of

a party.'" *Id.* (quoting *State v. Cottier*, 2008 S.D. 79, ¶ 7, 755 N.W.2d 120, 125).

"The jury instructions are to be considered as a whole, and if the instructions when

so read correctly state the law and inform the jury, they are sufficient." *State v.

Doap Deng Chuol*, 2014 S.D. 33, ¶ 31, 849 N.W.2d 255, 263 (quoting *Hauge*, 2013

S.D. 26, ¶ 17, 829 N.W.2d at 150-51).

## Analysis

[¶13.]	**1.	Whether the circuit court erred when it instructed the
jury that "South Dakota law does not allow a shareholder
to use the fiduciary duty concept to rewrite an original
deal he or she made with the corporation."**

[¶14.]	Schultzes claim that the circuit court erred when it instructed the jury,

over their objection, as follows:

> South Dakota law does not allow a shareholder to use the
> fiduciary duty concept to rewrite an original deal he or she made
> with the corporation.

Instruction 27. The court relied on language from *Mueller v. Cedar Shore Resort,

Inc.*, 2002 S.D. 38, 643 N.W.2d 56, in formulating Instruction 27. In that case, we

said, "We are not prepared to allow a shareholder to use the fiduciary duty concept

to rewrite the original deal he or she made with the corporation, a modification that

the original parties to the transaction almost certainly would not have chosen." *Id.*

¶ 28, 643 N.W.2d at 67. Schultzes contend that the language from *Mueller*, as

applied in Instruction 27, was "taken out of context, applied incorrectly, and [was]

misleading and confusing." Schultzes further allege, as evidence of prejudice, that their "entire breach of fiduciary duty claims were effectively taken away from the jury" because "[t]he jury had no choice but to find for Scandretts[.]" Thus, Schultzes contend the case should be reversed and remanded for a new trial.[1]

## A. Context

[¶15.]     Schultzes argue that Instruction 27 took the cited language in *Mueller* "out of context." They argue that as a result, the jury was misled into believing that the passage from *Mueller* was "black letter law." In order to determine the context of *Mueller* and Instruction 27, we first consider the fiduciary duty of care and loyalty as it relates to majority and minority shareholders.

[¶16.]     This Court has recognized that majority, dominant, or controlling shareholders, or a group of shareholders acting together to exercise effective control, owe a fiduciary duty to minority shareholders in a closely held corporation. *See Mueller*, 2002 S.D. 38, ¶¶ 26-30, 643 N.W.2d at 66-67 (applying this rule); *Hayes v. N. Hills Gen. Hosp.*, 1999 S.D. 28, ¶¶ 51-52, 590 N.W.2d 243, 252-53 (recognizing the rationale that "officers and directors have a fiduciary duty when dealing with minority shareholders[,]" and that this "rationale supports the adoption of a

---

1.     At the outset, we question both parties' extensive reliance on the doctrine of minority shareholder oppression in support of their arguments on this issue. This issue relates to an instruction to the jury regarding fiduciary duty, not minority shareholder oppression. Moreover, minority shareholder oppression was tried before the circuit court, not the jury. Thus, any applicability of minority shareholder oppression to this issue is suspect. Furthermore, the parties disagree on whether Schultzes appealed the issue of minority shareholder oppression. Scandretts argue that Schultzes did not "appeal the Findings of Fact and Conclusion[s] of Law or Judgment on their claims for minority shareholder oppression or accounting."

fiduciary duty between dominant shareholders and minority shareholders"). The fiduciary duty that majority shareholders owe to minority shareholders in a closely held corporation "is characterized by a high degree of diligence and due care, as well as the exercise of utmost good faith and fair dealing." *Mueller*, 2002 S.D. 38, ¶ 26, 643 N.W.2d at 66. This fiduciary duty, however, is limited in certain circumstances. In *Mueller*, we stated that "the scope of the fiduciary duty owed by a family-owned corporation that has gifted its shares to the shareholders is somewhat more limited than that duty owed in the context of a traditional close corporation." *Id.* ¶ 28, 643 N.W.2d at 66-67. In cases where the minority shareholders received their shares by gift or inheritance, the minority shareholders are only entitled to "decent" conduct by the majority shareholders. *Id.*

[¶17.] Instruction 27 originated from a section in *Mueller* discussing the application of the "decent" conduct standard to minority shareholder fiduciary duty claims:

> Because of the potential for abuse, the scope of the fiduciary duty owed by a family-owned corporation that has gifted its shares to the shareholders is somewhat more limited than that duty owed in the context of a traditional close corporation. . . . [W]here the shareholders receive their stock by gift and invest no capital, the shareholders' minimum economic return and right of participation become limited. Hamilton, supra at § 8.25. *We are not prepared to allow a shareholder to use the fiduciary duty concept to rewrite the original deal he or she made with the corporation, a modification that the original parties to the transaction almost certainly would not have chosen.* To do so would significantly undermine a primary method of tax planning and wealth sharing by holding family business owners hostage, subject to the demands of every gifted shareholder, whether reasonable or not. Therefore, the question is whether [the minority shareholders] have identified in the record sufficient evidence to demonstrate that the conduct of the individually named directors, under these circumstances,

amounted to something below the "decentness" standard set forth above.

2002 S.D. 38, ¶ 28, 643 N.W.2d at 66-67 (emphasis added). The cited language in *Mueller* merely explained why the "decent" conduct standard, rather than the traditional standard, was appropriate in cases where the minority shareholders in a closely held corporation received their shares by gift or inheritance. *Id.* Instruction 27, however, treated this language as a rule of law. Accordingly, the passage from *Mueller* was taken out of context as it was stated in Instruction 27.

### B. Incorrect Application

[¶18.]    Schultzes further argue that Instruction 27 was "applied incorrectly." We agree. As given, the language in Instruction 27 was broader than the cited language in *Mueller*. Instruction 27 provided, "South Dakota law does not allow *a shareholder* to use the fiduciary duty concept to rewrite an original deal he or she made with the corporation." (Emphasis added.) The language cited from *Mueller* in Instruction 27, however, only pertained to gifted shareholders, not *all* shareholders. *Id.* Furthermore, the circuit court did not determine whether the Schultz Family Trust, and Don and Eloise Schultz as trustees of the Schultz Family Trust, were gifted shareholders. The court stated, because "[t]here was no evidence presented at trial regarding the Schultz Family Trust," "[i]t is unclear whether the Schultz Family Trust is to be considered an original shareholder, or a subsequent shareholder receiving by gift."

[¶19.]    Moreover, in *Mueller*, we stated that "[w]e are not prepared to allow a shareholder to use the fiduciary duty concept to rewrite the original deal *he or she made with the corporation*[.]" 2002 S.D. 38, ¶ 28, 643 N.W.2d at 67 (emphasis

added). In this case, the Compensation Agreement was not the original deal that the gifted shareholders made with the corporation. There was neither testimony nor argument at trial as to Schultzes' "deal" as gifted shareholders. It appears that the original deal the gifted shareholders entered into with Cosmos was that in return for not investing capital or resources, they would receive limited economic return and limited right of participation. Thus, in addition to being too broad, Instruction 27 had nothing to do with Schultzes' claims as Schultzes were not making any claim in this lawsuit based on their "deal" with the corporation.

[¶20.] Our conclusion that Instruction 27 did not accurately reflect the language cited in *Mueller* is reinforced by a review of Robert W. Hamilton, *Business Organizations: Unincorporated Businesses and Closely Held Corporations* § 8.35 (1996), which is the authority relied on in *Mueller* in support of adopting the "decent" conduct standard. Hamilton does not state that a shareholder is precluded from using the fiduciary duty concept to rewrite the original deal he or she made with the corporation. Instead, Hamilton said that "[t]he fiduciary principle also has a significant capacity for mischief, since it may be utilized by a sophisticated investor to obtain a court order in effect rewriting *the original 'deal' he cut* with the corporation." *Id.* (emphasis added). Hamilton reasons that "[l]aw and economics scholars have . . . criticized the cases creating a special fiduciary duty on the ground that it imposes an *ex post* duty that the parties to the transaction almost certainly would not have selected if they had considered what term to include in their corporate 'contract.'" *Id.* Based on Hamilton's treatise and *Mueller*, we conclude that Instruction 27 was incorrectly applied in this case.

## C. Misleading and Confusing

[¶21.]     Schultzes also contend that Instruction 27 "confused and misled" the jury. Because Instruction 27 incorrectly applied *Mueller* and took the cited language out of context, we agree with Schultzes that Instruction 27, if read in isolation, may have misled and confused the jury. *Vetter*, 2006 S.D. 21, ¶ 10, 711 N.W.2d at 615 ("[N]o court has discretion to give incorrect, misleading, conflicting, or confusing instructions."). Consequently, the circuit court erred when it allowed Instruction 27.

## D. Prejudice

[¶22.]     To constitute prejudicial error, however, an instruction must be prejudicial in addition to erroneous. *See Whistler*, 2014 S.D. 58, ¶ 13, 851 N.W.2d at 910 (quoting *Cottier*, 2008 S.D. 79, ¶ 7, 755 N.W.2d at 125). "Erroneous instructions are prejudicial under SDCL 15-6-61 when in all probability they produced some effect upon the verdict and were harmful to the substantial rights of a party." *Vetter*, 2006 S.D. 21, ¶ 10, 711 N.W.2d at 615. "[W]hen the question is whether a jury was properly instructed overall, that issue becomes a question of law reviewable de novo. Under this de novo standard, 'we construe jury instructions as a whole to learn if they provided a full and correct statement of the law.'" *Id.* (footnote omitted).

[¶23.]     We are not convinced that Schultzes were prejudiced by Instruction 27. The jury instructions, when viewed as a whole, fully and correctly stated the law and informed the jury on the fiduciary duty of care and loyalty. Jury Instructions 19, 20, and 21 informed the jury on the applicable fiduciary duty:

Instruction 19

All officers and directors of a corporation, whether Plaintiff or Defendants, owe a fiduciary duty to the corporation and its shareholders.  They are required to use a high degree of diligence and due care and of the utmost good faith and fair dealing in the exercise of their fiduciary duties to shareholders. They must act in good faith and refrain from transactions in which they receive an improper personal benefit.

Instruction 20

Each member of the Cosmos board of directors is required to act in good faith and in a manner the director reasonably believes to be in the best interests of the corporation when discharging his or her duties.  The members of the board of directors, when becoming informed in connection with their decision-making function or devoting attention to their oversight function, shall discharge their duties with the care that a person in a like position would reasonably believe appropriate under similar circumstances.

Instruction 21

Majority shareholders of a closely held corporation occupy a fiduciary position in respect to the minority shareholders. Majority shareholders owe a fiduciary duty of care and a fiduciary duty of loyalty to the minority shareholders requiring diligence, due care and the exercise of the utmost good faith and fair dealing.  Majority shareholders must act in good faith and refrain from transactions in which the majority shareholder receives an improper personal benefit.

[¶24.]     Instructions 19, 20, and 21 allowed Schultzes to present their theory of the case despite the inclusion of Instruction 27.  At trial, the jury viewed the total amount of compensation received by Lyle, Heidi, Marlene, and Kevin.  The jury listened to testimony from Lyle that he continued to receive his same salary even after Heidi assumed many of his responsibilities as manager.  The jury heard testimony that Scandretts paid themselves benefits including daycare, vehicles, cell

phones, health insurance, and personal vacations. The jury listened to testimony

from Lyle indicating that he may have engaged in self-dealing.[2]

[¶25.]        Schultzes argued during closing arguments that this evidence

demonstrated that Scandretts did not act in the best interests of Cosmos

(Instruction 20) or act with diligence, due care and the exercise of the utmost good

faith and fair dealing (Instructions 19 and 21). Certainly, the jury could have found

that Scandretts were not acting in good faith and in a manner in the best interests

of Cosmos notwithstanding Instruction 27. Nonetheless, Schultzes complain that a

juror who followed Instruction 27 would have believed that South Dakota law does

not require a majority shareholder, director, or officer of a corporation to review,

revise, or terminate his compensation agreement. But Instructions 19, 20, and 21

clearly instructed the jurors that Scandretts had a duty to refrain from improper

personal benefit, which could certainly include consideration of the Compensation

Agreement. Consequently, contrary to their argument, Schultzes' fiduciary duty

claims were not "effectively taken away from the jury with [Instruction 27]."

[¶26.]        In fact, it appears the jury instructions were actually more favorable to

the Plaintiffs than the law required. The jury instructions in this case did not

instruct on the "decent" conduct standard in *Mueller*, 2002 S.D. 38, ¶ 28, 643

---

2.    The Plaintiffs alleged that Lyle engaged in self-dealing by charging rent to
      the corporation for use of two billboards on his property. He purchased
      property adjacent to Cosmos for $1,000 and charged Cosmos $1,000 a year to
      rent the land. In addition, he charged Cosmos $10,000 a year to lease two
      billboards for a total of $11,000 rent.

N.W.2d at 67.[3] Rather, the circuit court instructed the jury that Scandretts owed Schultzes the traditional fiduciary duty of care and loyalty. In *Mueller*, the plaintiffs claimed that certain individually named directors, who were also the majority shareholders, breached their fiduciary duty owed to them as minority shareholders. *Id.* ¶¶ 25-33, 643 N.W.2d at 66-67. We held that because the plaintiffs were gifted their shares and because the corporation was a closely held corporation, "the question is whether [the plaintiffs] have identified in the record sufficient evidence to demonstrate that the conduct of the individually named directors, under these circumstances, amounted to something below the 'decentness' standard[.]" *Id.* ¶ 28 643 N.W.2d at 67.

[¶27.]     Likewise, in this case, the Defendants are individually named directors and are members of a family who, collectively, are the majority shareholders. Plaintiffs Steve, Mark, and David received their shares of the corporation by gift

---

3.     Schultzes contend that *Mueller* created a distinction between "family-owned" corporations and closely held corporations and, as a result, the "decent" conduct standard only applies to "family-owned" corporations. Because Schultzes and Scandretts are two separate families, Schultzes argue that the "decent" conduct standard did not apply to them. This interpretation is not supported by *Mueller* nor is it consistent with existing law. While *Mueller* did state that "the scope of the fiduciary duty owed by a *family-owned corporation* that has gifted its shares to the shareholders is somewhat more limited than that duty owed in the context of a *traditional close corporation*[,]" 2002 S.D. 38, ¶ 28, 643 N.W.2d at 66-67 (emphasis added), it is clear from the context of the decision that this Court did not intend to create a distinction between family-owned corporations and traditional closely held corporations. Rather, we created a distinction between close corporations that gifted its shares to shareholders and traditional close corporations where the shareholders did not receive their shares by gift or inheritance. *Id.* The close corporation in *Mueller* just so happened to also be a closely held, family-owned corporation. Furthermore, Hamilton, *supra* ¶ 20, § 8.25, recognized no such distinction between family-owned corporations and traditional closely held corporations.

similar to the plaintiffs in *Mueller*. As we noted above, the circuit court did not determine whether the Schultz Family Trust was an original shareholder or a subsequent shareholder by gift. Thus, while the circuit court correctly instructed the jury that the Defendants, as officers and directors, owed the traditional fiduciary duty of care and loyalty to the corporation (Instruction 19), it is unclear whether the Defendants owed that same fiduciary duty of care to all of the Plaintiffs as gifted minority shareholders in a closely held corporation. At the very least, Steve, Mark, and David, as gifted minority shareholders in a closely held corporation, were only entitled to the limited "decent" conduct standard from the Defendants as majority shareholders and directors. *See id.* Thus, in light of all the reasons provided herein, we conclude that Schultzes failed to demonstrate that they were prejudiced by Instruction 27. *Whistler*, 2014 S.D. 58, ¶ 13, 851 N.W.2d at 910 (quoting *Cottier*, 2008 S.D. 79, ¶ 7, 755 N.W.2d at 125).

[¶28.]  **2.  Whether the circuit court erred when it declined to instruct the jury on employment-at-will concepts and that officers and directors have a duty to terminate a contract entered into by the corporation if the contract becomes against the best interests of the corporation.**

[¶29.]  Schultzes next argue that the circuit court erred when it "denied three interrelated instructions proposed by [them]" because, "[t]hrough the denial of these instructions, [they] were prevented from arguing to the jury that Lyle's compensation arrangement was an employment at-will arrangement that could be modify [sic] if it subsequently became adverse to the corporation." The refusal to give these instructions, Schultzes argued, "also prevented the jury from determining if [Schultzes] had a duty to analyze the salaries of Marlene, Heidi and Kevin in

relation to the best interests of the corporation." The three proposed jury

instructions provided:

Proposed Instruction 15

The length of time which an employer and employee adopt for the estimation of wages is relevant to a determination of the term of employment.

Proposed Instruction 16

An employment contract having no specified term may be terminated at will, or in other words, at any time, and for any reason or for no reason, by the employee of the employer.

Proposed Instruction 17

If a contract entered into by a corporation becomes against the best interests of the corporation and the corporation can terminate the contract under the contract terms, then the officers and the directors of a corporation have a duty to terminate the contract.

[¶30.]    Schultzes' theory for proposing the above three jury instructions, as

evidenced by the language in the instructions, was that Lyle was an at-will

employee of Cosmos and, therefore, he had a fiduciary "duty to terminate [his own

employment] contract" because his contract was no longer in "the best interests of

the corporation[.]"  Schultzes advance no authority to support this argument.  Nor

do we find any authority that supports this argument.  As we have said, the "failure

to cite authority is fatal."  *Steele v. Bonner*, 2010 S.D. 37, ¶ 35, 782 N.W.2d 379, 386.

Proposed Instruction 17 is an incorrect statement of the fiduciary duty for officers

and directors of a corporation.  *See* SDCL 47-1A-830.  Instead, the correct standard

is that "[a]n officer or director of a corporation has a fiduciary duty to act in a

manner that *he reasonably believes is in* [the corporation's] best interests."

*Lindskov v. Lindskov*, 2011 S.D. 34, ¶ 15, 800 N.W.2d 715, 719 (emphasis added). *See also* SDCL 47-1A-830 ("Each member of the board of directors, when discharging the duties of a director, shall act in good faith and in a manner the director reasonably believes to be in the best interests of the corporation."). Jury Instruction 20 stated, "Each member of the Cosmos board of directors is required to act in good faith and in a manner the director reasonably believes to be in the best interests of the corporation when discharging his or her duties. Therefore, the jury was instructed on the correct standard.

[¶31.]     While a director or officer may have a fiduciary duty in certain instances to revise his employment contract when discharging his duties as an officer or director if he reasonably believes it is in the best interests of the corporation to act in this manner, *see* SDCL 47-1A-830, there is no requirement that a director must "terminate" his own employment contract when the contract "becomes against the best interests of the corporation." Clearly, an endorsement of Proposed Instruction 17 would lead to troubling results as it would presumably require, in almost all conceivable circumstances, directors and officers to reduce their salaries "in the best interests of the corporation."[4] Accordingly, the circuit

---

4.     The parties in this case dispute whether Lyle was an at-will employee. Citing *Mueller*, 2002 S.D. 38, ¶ 20 n.4, 643 N.W.2d at 64 n.4, Schultzes argue that "employee/shareholders in a closely-held corporation are at-will." Scandretts, on the other hand, cite *Mueller*, 2002 S.D. 38, ¶ 15, 643 N.W.2d at 63, and *Landstrom v. Shaver*, 1997 S.D. 25, ¶ 44, 561 N.W.2d 1, 10, for the proposition that "[c]losely-held corporations are not free to terminate the employment of the owners 'at-will.'" Because of our conclusion that the circuit court did not abuse its discretion in refusing the proposed jury instructions, we need not determine whether Lyle was an at-will employee.

court did not abuse its discretion in refusing Schultzes' proposed instructions. *See*

*State v. Walton*, 1999 S.D. 80, ¶ 9, 600 N.W.2d 524, 528.

[¶32.]      **3.**      **Whether the circuit court erred when it declined to instruct the jury that directors owe a fiduciary duty of undivided and unselfish loyalty to the corporation.**

[¶33.]      For their third and final assignment of error, Schultzes argue that the

circuit court erred when it refused to give Schultzes' Proposed Instruction 18:

> The fiduciary duty owed by a Director to minority shareholders
> requires an undivided and unselfish loyalty to the Corporation
> and also requires that there be no conflict between the Director's
> fiduciary duty and self-interest.

Schultzes argue that this instruction on the fiduciary duty of loyalty should have

been given to the jury because "Lyle was not putting the corporation above his own

self-interests (i.e. his Compensation Agreement) which was a breach of his fiduciary

duty of loyalty." Moreover, Schultzes contend that Lyle did not disclose to the

shareholders the amount of compensation he was paid or the information needed to

calculate his compensation before they signed the Historical Record in 2004,

thereby ratifying the Compensation Agreement.

[¶34.]      Schultzes argue that the circuit court "should have granted this

instruction describing the fiduciary duty of loyalty as it is a proper statement of law

and there was sufficient evidence in the record supporting a breach of the duty of

loyalty."[5] However, the court did instruct the jury on the fiduciary duty of loyalty in

---

5.      We are not persuaded that Proposed Instruction 18 was a correct statement of the law. Schultzes cite the following language from *Mueller* in support of the instruction: "Hallmark behavior of such a breach [of fiduciary duty of loyalty] includes the failure to disclose information, director or shareholder self-dealing, making fraudulent misrepresentations regarding past or future

(continued . . .)

Instructions 19, 20, and 21. The court explicitly indicated to the jury that "[t]here is no dispute the defendants owed a fiduciary duty of . . . loyalty to the [P]laintiffs[.]" Instructions 19, 20, and 21 fully set out the law on the fiduciary duty of loyalty.

[¶35.] The circuit court "has a duty to instruct the jury on applicable law where the theory is supported by competent evidence." *Jahnig v. Coisman*, 283 N.W.2d 557, 560 (S.D. 1979). The court does not commit error, however, when it "refuses to amplify instructions which substantially cover the principle embodied in the requested instruction." *State v. Klaudt*, 2009 S.D. 71, ¶ 20, 772 N.W.2d 117, 123. The instructions given to the jury regarding the duty of loyalty correctly and adequately explained the fiduciary duty of loyalty as it related to this case. Consequently, Schultzes' rejected jury instruction merely amplified instructions that covered the duty of loyalty. *Id.* We conclude the circuit court did not err when it rejected Schultzes' proposed jury instruction.

**Conclusion**

[¶36.] Jury Instruction 27, which was worded more broadly than the cited language in *Mueller* and incorrectly applied in this case, did not prejudice Schultzes. The jury instructions, when viewed as a whole, adequately instructed the jury of Scandretts' fiduciary duty of care and loyalty. Lastly, the circuit court did not err in rejecting certain proposed jury instructions by Schultzes where no

_____

(. . . continued)
events, and surreptitious conduct or communications." 2002 S.D. 38, ¶ 29, 643 N.W.2d at 67. This language does not support the broad proposition in Schultzes' proposed jury instruction that the duty of loyalty "requires that there be *no conflict* between the Director's fiduciary duty and self-interest." (Emphasis added.)

authority was cited in support of the instructions and the instructions merely amplified other jury instructions. We affirm.

[¶37.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.